7033

MOORE v. GRIFFIN.

PRIMARY ELECTIONS.—Under the statutes governing primary elections a candidate for a county office is not required to file with the clerk of court a sworn statement of expenses incurred between the first and second elections.  If he file such statement before the first election it is sufficient.

Petition by J. G. Moore against J. O. Griffin asking for a writ of *certiorari* requiring the State Executive Democratic Committee to certify to the Supreme Court the record in the matter of contest between the parties before the County Executive Committee of Colleton county and appealed to the State Democratic Executive Committee.

Mr. Justice Woods granted the writ on October 9th and made same returnable before Supreme Court on October 16th.

The matter was heard by the Court on October 16th upon return of the State committee.  The contention of contestant was that, although contestee had received the majority of the votes cast for county supervisor at the second primary election in Colleton county, he should not be declared elected because he had not filed before the second primary

an itemized sworn statement of his expenses and disbursements in connection with his campaign. There was no question as to his having filed such statement in the office of clerk of court before the first election.

*Messrs. Fishburne & Fishburne* and *P. H. Nelson,* for contestant.

*Messrs. J. S. Griffin* and *Padgett & Lemacks,* contra.

October 17, 1908. PER CURIAM. Upon the petition herein, a writ of *certiorari* was issued by Associate Justice C. A. Woods, directed to the State Democratic Executive Committee, requiring that committee to certify to this Court their proceedings in the matter of the contest between J. E. Moore and J. O. Griffin, candidates for the office of supervisor in the County of Colleton. The committee having certified their proceedings to this Court, the Court, having heard argument thereon, is of the opinion that the contestee, J. O. Griffin, complied with the statute of the State, and the Constitution and Rules of the Democratic party, in filing his pledge and statement of expenses, and that no error of law was committed by the State Democratic Executive Committee.

The Court, therefore, adjudges that the return to the writ is sufficient and that the proceedings herein be dismissed.

MR. JUSTICE GARY *did not sit in this case.*

## 7034

*Messrs. Frank B. Gary, Wm. N. Graydon* and *H. J. Haynsworth,* contra.

The arguments in this case have been misplaced and there are none on file.

The opinion herein was filed on April 7, 1908, but on petition for rehearing remittitur held up until

October 26, 1908. The opinion of the Court was delivered by

JUDGE CHAS. G. DANTZLER, Acting Associate Justice, in place of Mr. Justice Gary, disqualified.

This case having been heard by his Honor, Judge Purdy, he filed the following decree:

"This is an action brought by the plaintiff, M. Harvey Wilson, in his own right, and as administrator of the estate of Jane L. Gordon, deceased, and by the other plaintiffs, against the defendants for the partition of the real estate of the said Jane L. Gordon. Subsequently, M. H. Wilson, as administrator of the estate of Elizabeth C. Douglass, Anna McQuirk,, and J. T. McCord, L. T. Miller, as administrator of Mary V. Miller, and J. W. Kellar, as administrator of Louise A. Kellar, filed petitions asking to be made parties defendants to said cause and to be allowed to set up their claims as ultimate remaindermen under the eighth clause of the will of R. C. Gordon, deceased. The petitions were allowed, and said petitioners filed answers to said complaint, in which it is claimed that under the eighth clause of the will of R. C. Gordon a large amount of property and money went into the hands of Mary W. Gordon and Jane L. Gordon to be held by them under the limitations in the will of R. C. Gordon, and that the estate of Jane L. Gordon is liable to these defendants as ultimate remaindermen. By a previous order of this Court the shares of the parties to this action have been ascertained and fixed, and the only question now before the Court is the claim set up by the remaindermen, as above set forth. The parties to this action, other than the claimants, take the position that the whole matter is *res judicata* and rely upon a record in a case entitled 'Jane L. Gordon, as administratrix of R. T. Gordon and in her own right, plaintiff, against Mary W. Gordon, M. Har-

vey Wilson, Georgia C. Miller, and others, legatees and devisees of R. C. Gordon, deceased, defendants.' In that complaint a full statement was made as to the condition of the estate of R. T. Gordon and the estate of R. C. Gordon, the plaintiffs alleging as follows, in the tenth paragraph of the complaint: 'The plaintiff is embarrassed as to the disposition of the funds that will come into her hands as said administratrix by the conflicting claims of parties having or claiming an interest under the will of R. C. Gordon, deceased, and the different construction of their respective rights in the remainder, after the life estate, devised and bequeathed to R. T. Gordon under the seventh and eighth clauses of the will, and also as to the amount for which the said estate may be liable under said will to other parties. As said parties are numerous and widely scattered, and the plaintiff is advanced in years, she desires the aid and direction of this honorable Court to ascertain and settle the rights of all claimants that she may be able and ready to distribute such sums as may come into her hands among the parties entitled, and not to be compelled to endure risk and responsibility of holding the moneys of the estate of her intestate subject to the possibility of future protracted litigation. This plaintiff also in her own right claims an interest in the remainder under the eighth clause in the personal estate and in the real estate, exclusive of her right to a home under the will, which she desires to be ascertained and allotted to her.' The parties all answered, and the case was heard and decided by Judge Fraser, from which the appeal was taken to the Supreme Court, which is reported in 32 S. C., 563, 11 S. E., 334. Subsequently, the case was again referred to the master for Abbeville county, and all the old records from the court of equity and the probate court were offered in evidence. The master made his report, to which all parties excepted. The case was heard on the exceptions by his Honor, Judge Norton, who filed a decree in the case, from which all parties appealed. Subsequently, an offer of compromise and settlement was proposed and accepted, and

Judge Norton signed another order or decree, which was consented to by all the parties. By the terms of that decree, taken in connection with the pleadings, the testimony, the exceptions to the master's report, and the exceptions to the first decree of Judge Norton, it appears that all the matters attempted to be brought up by the answers of claimants herein have been conclusively settled by the former decree of Judge Norton, and are *res judicata*. It is therefore ordered, adjudged and decreed, that the claims set up in the answers of the said administrators be and the same are hereby dismissed, and that said claimants pay the cost of this litigation brought about by said claims; that out of the proceeds of the sale of the land described in the complaint now in the hands of the master, and out of the funds hereafter to come into his hands from the said sale, the master do pay to M. Harvey Wilson, or his attorneys, one-twelfth of the net proceeds of sale, and that he hold the one-twelfth interest of Mrs. Jane W. Crymes subject to the further order of this Court; that he do pay to Evans Gordon and Georgia C. Miller, or their attorneys, each one-eighth of the net proceeds of sale; that he do pay to Samuel Kirkwood and Robert Kirkwood, or their attorneys, each one-eighth of the net proceeds of sale; that he do pay to Samuel A. McCord, Mary L. A. Perrin, Rebecca Faust, and Martha A. Patton, or their attorneys, each one-sixteenth of the net proceeds of sale; that each of said parties account to said master for any sums already received by them, and the same be deducted from their dues. A petition having been filed by Mr. W. N. Graydon in behalf of Robert N. Kirkwood seeking to subject the interest of Jane W. Crymes to the payment of an alleged debt, the said Robert N. Kirkwood may proceed herein to establish his said claim, and may apply for such orders as he may be advised are necessary or proper."

The appellants seek a reversal of this decree upon the following numerous exceptions:

1. "Because his Honor erred in finding and holding that by the terms of the decree of Judge Norton made in the case of Jane L. Gordon, as administratrix of Robert T. Gordon, deceased, against Mary W. Gordon and others, taken in connection with the pleadings, testimony and exceptions to the master's report and the exceptions to the first decree, it appears that all the matters attempted to be set up by the answers of the claimants herein were settled by the former decree of Judge Norton, and are now *res judicata,* and erred in ordering that the claims set up in the answers of the appellants herein be dismissed and that the claimants pay the cost of this litigation, and erred in directing a distribution of the moneys now in the hands of the administrator and master among the claimants of the estate of Jane L. Gordon, deceased, the error being in the following particulars:   (a) Because it had already been adjudicated in the case of Jane L. Gordon, as administratrix, against Mary W. Gordon, that these appellants, upon the death of Jane L. Gordon and Mary W. Gordon, would be entitled to the property received by them under the eighth clause of the will of Robert C. Gordon, and that their estates would be liable to account to these claimants for said property at their deaths and the death of the survivor of them.   (b) The case of Jane L. Gordon, as administratrix, etc., against Mary W. Gordon and others, including the pleadings, answers, and other proceedings therein, never adjudicated nor ever attempted to adjudicate with regard to any matters except the estate of Robert T. Gordon, deceased, including the property which he had received under the will of Robert C. Gordon, deceased, and that which he might have held as executor of said will, and there was no attempt to adjudicate nor to settle any claim which the appellants in this case might have against the estate of Mary W. Gordon, Jane L. Gordon and the survivor of them on account of property and moneys, which they had already, prior to that action, received under the eighth clause of the will of Robert C. Gordon.   (c) The

claims of the appellants herein against the estate of Mary W. Gordon and Jane L. Gordon on account of money and property which they had received from the estate of Robert T. Gordon under the eighth clause of the will had not matured at the time of the said litigation, and the same could not have been adjudicated, and no attempt was made to adjudicate or settle the same, but the said claims were expressly reserved. (d) The said consent of Jane L. Gordon, as administratrix, etc., against Mary W. Gordon and others, only adjudicated and settled the estate of Robert T. Gordon and so much of the estate of Robert C. Gordon as was at the death of Robert T. Gordon in his hands and possession as executor and in his own right under the eighth clause of the will of Robert C. Gordon, but it did not attempt to adjudicate or settle any other rights of the appellants herein which had not then matured. (e) The claims of the appellants herein against Jane L. Gordon and Mary W. Gordon and against the estate of the survivor of them was not in any way involved in the said litigation of Jane L. Gordon, as administratrix, etc., against Mary W. Gordon and others, and it was not the subject-matter of the said litigation and was not and could not have been adjudicated or settled in said litigation.

2. "Because his Honor should have found that under the eighth clause of the will of Robert C. Gordon, Mary W. Gordon, as life tenant, received in cash the sum of $4,743.75, as follows: March 27, 1858, $857; May 20, 1859, $2,465; January 1, 1860, $1,120; July 1, 1861, $100; April 1, 1862, $101.75; and on the    day of    , 1873, $100, as shown by her receipts to Robert T. Gordon, as executor of Robert C. Gordon, deceased, which amounts were a part of the estate of Robert C. Gordon, deceased, held by her as life tenant under the eighth clause of the will of Robert C. Gordon, and for which she was accountable to the remaindermen, the appellants herein, under the said will, and his Honor should have held that having so received such amount and her estate having gone at her death to Jane L.

Gordon, then at the death of Jane L. Gordon her estate was accountable to appellants for the said sum of money and is now accountable and the same should be paid to the appellants herein, with interest from the date of the death of Jane L. Gordon.

3. "Because his Honor should have found and held that under the terms of the eighth clause of the will of Robert C. Gordon, deceased, Mary W. Gordon, came into possession of other personal property than moneys and slaves to the amount of $2,000. Her estate at her death having been turned over to Jane L. Gordon, his Honor should have held that the estate of Jane L. Gordon was and is accountable to these claimants as remaindermen under the eighth clause of the will of Robert C. Gordon for such amount, with interest.

4. "Because his Honor should have found that Jane L. Gordon, named in the will of Robert C. Gordon as Jane Eliza Gordon, as life tenant received under the eighth clause of the will of Robert C. Gordon the sum of $4,912.72, as follows: March 27, 1858, $857; May 20, 1859, $2,595; January 1, 1860, $1,120; July 21, 1861, $100; April 1, 1862, $101.75; August 20, 1866, $38.97; and on the day of    , 1873, $100. His Honor should have held that the said Jane L. Gordon received the said moneys as life tenant under the eighth clause of the will of Robert C. Gordon, deceased, and at her death her estate was accountable to the appellants herein therefor and should have held that the same is due, owing and payable to the claimants herein, with interest from the date of her death.

5. "Because his Honor should have found and held that the said Jane L. Gordon, named in the will as Jane Eliza Gordon, received under the eighth clause of the will of Robert C. Gordon, deceased, personal property other than money and slaves of the value of $2,000, and which she has held as life tenant, and for which she is accountable to the appellants herein, and should have ordered and adjudged that her estate do pay to the appellants herein as remain-

26—81

dermen under the eighth clause of the will of Robert C.
Gordon the said sum of money as representing such prop-
erty.

6. "Because his Honor should have found and ad-
judged that the said Mary W. Gordon and Jane L. Gordon,
as life tenants, received from the estate of Robert C. Gor-
don, deceased, under the eighth clause of his will, which is
a residuary clause, moneys amounting to $10,656.47, slaves
valued at $33,650, and other personal property valued at
$4,000, for all of which property his Honor should have
held that the estate of Jane L. Gordon is now accountable to
these appellants; the said clause being residuary and the said
parties being liable to account for said property at its cash
value at the time it was received by them under the eighth
clause of said will.

7. "Because his Honor should have held that the estate
of Jane L. Gordon is now accountable to appellants herein
on account of moneys received by her and Mary W. Gordon,
whose estate she received, from the estate of Robert C. Gor-
don under the eighth clause of his will, including the sum
of $12,916.92 on account of bonds, notes and other prop-
erty willed by the said Robert C. Gordon to them as life ten-
ants under the eighth clause of the will of Robert C. Gordon
and to the appellants as remaindermen; it being submitted
that the said life tenants were trustees or *quasi* trustees for
these appellants, and that the estate of Jane L. Gordon hav-
ing come into possession of all the property of which Mary
W. Gordon died seized and possessed is estopped to claim
that Jane L. Gordon and Mary W. Gordon did not receive
the said money as against these claimants when it was their
duty to these claimants to collect the same, and hold the
same for them under the terms of the will of Robert C.
Gordon.

8. "Because his Honor should have held and adjudged in
any event that the estate of Jane L. Gordon is now account-
able to these claimants for the actual value of the said slaves
at the time they were sold and for the actual cash which was

received for them and paid over to Robert T. Gordon as trustee upon their *ex parte* application. The estate of the said Jane L. Gordon is therefore accountable to these claimants for the sum of $8,789 received by Robert T. Gordon, trustee, on her account for such slaves, and is accountable to these claimants for the sum of $5,345.81 received by the said R. T. Gordon as trustee on account of Mary W. Gordon, all her property having passed to Jane L. Gordon at her death, and his Honor should have so found and adjudicated.

9. "Because his Honor should have held and adjudged in any event that the estate of Jane L. Gordon was accountable to these claimants for the property received by her and Mary W. Gordon under the eighth clause of the will of R. C. Gordon, as life tenants, and they were liable to turn over to these claimants as remaindermen an estate of as much value as it was when they received it, unless they could show some good reason why they should be relieved from liability as to any part of it. And in any event he should have held and adjudicated that the estate of Jane L. Gordon was liable to account to these remaindermen for the $10,000 of actual cash which went into their hands as life tenants under the eighth clause of the said will, and for the actual cash value of all the merchantable property received by Mary W. and Jane L. Gordon as life tenants under the eighth clause of the will, which property amounted to about $4,000; the said Jane L. Gordon having at the death of Mary W. Gordon come into possession of her entire estate.

10. "Because his Honor should have held that Jane L. Gordon, at the death of Mary W. Gordon, having come into possession of all the property of Mary W. Gordon, was and is liable to account to these claimants for an estate substantially the same as the estate which was received by the two life tenants under the eighth clause of the will of R. C. Gordon, and, being so accountable, he should have adjudicated, in any event, that they were accountable for the actual cash received by them as life tenants of about $10,000 in

addition to the value of the slaves and the cash received from a sale of the same and in addition to the other personal property valued at about the sum of $4,000.

11. "Because his Honor should have held: (a) That there was no adjudication in the case of Jane L. Gordon, as administratrix, etc., v. Mary W. Gordon *et al.,* in the Court of Common Pleas, that the sum of $6,458.46, found by the decree in the court of equity in the case of R. T. Gordon v. James Gordon *et al.,* to be due to Mary W. Gordon and a like sum to Jane L. Gordon by R. T. Gordon, had not been paid to them; the sum being due them under the limitations of the eighth clause of the will of R. C. Gordon. His Honor should have held that the question as to whether said amounts had been paid to Mary W. Gordon and Jane L. Gordon was and still is an open question in this case. (b) He should further have held and found that these claims presented by Mary W. Gordon and Jane L. Gordon were questions between them and the estate of R. T. Gordon, in which estate these claimants were not interested, and their rights to claim under the will of R. C. Gordon not having matured, his Honor should have held that, even if it had been adjudicated that said amounts had not been paid, it was merely an adjudication of the issue so far as it affected the claim of the then claimants, Mary W. Gordon and Jane L. Gordon, against the estate of R. T. Gordon, and the determination of that issue cannot now affect the claim of these appellants that said sum had actually been paid, nor estop them to show that it had actually been paid. His Honor erred in holding to the contrary.

12. "Because his Honor should have held and adjudged that Mary W. Gordon and Jane L. Gordon were trustees or *quasi* trustees for these appellants, and that as such trustees or *quasi* trustees it was the duty of each to collect the sum of $6,458.46, found to be due each of them by R. T. Gordon, as executor of the will of R. C. Gordon, and he should have held that said Mary W. Gordon and Jane L. Gordon, as life tenants, and as such trustees, or *quasi* trus-

tees, for these appellants, did actually collect the same; that, having allowed the space of more than fifty years to elapse since such decree, with no showing that they could not collect the said amount, with nothing appearing in the record furnishing a reason why a decree could not have been granted therefor and the same collected at any time, having suffered the estate in the hands of R. T. Gordon, as executor of R. C. Gordon, to diminish to practically nothing, his Honor should have held that the estate of Jane L. Gordon, she having received the entire estate of Mary W. Gordon, is now estopped as against these appellants to claim that said sums were not paid to Mary W. Gordon and herself, and that it will be presumed from the great lapse of time, coupled with the duty owing by them to these appellants, that they did their duty, procured a proper decree and collected the said sums of money, and that they held the same under the limitations of the will of R. C. Gordon. His Honor should therefore have charged the estate of Jane L. Gordon with said sums of money in favor of these appellants, with interest since the date of her death.

13. "Because his Honor erred in not holding that the first decree of Judge Norton in the case of Jane L. Gordon, as administratrix, etc., v. Mary W. Gordon et al., in the Court of Common Pleas, having been appealed from and pending the appeal a compromise decree having been made, the second or compromise decree was and is the only adjudication in the said case, the first decree being merged in it, after first having been appealed from. His Honor should, therefore, have held that the first decree of Judge Norton is not binding on any of the parties to this action, and that it will not support the plea of res judicata as to any issue in this case. He erred in not so holding.

14. "Because his Honor should have held that the most that was adjudicated in the case of Jane L. Gordon, as administratrix, etc., v. Mary W. Gordon et al., in the Court of Common Pleas, was and is that Jane L. Gordon and Mary W. Gordon were entitled absolutely to the property or

money received in that case and these claimants are estopped to assert any claim to it or its proceeds *under the will of R. C. Gordon.* Beyond that his Honor should have held that nothing was adjudicated in that case against the claim now made by these appellants, and he erred in not so holding and adjudging."

Within due time, attorneys for respondents gave notice that they would move this Court to sustain Judge Purdy's decree on the following additional grounds:

1. "That the question as to the liability of the estate of R. T. Gordon to Jane L. Gordon and Mary W. Gordon for one-fourth of the fund retained by him under the decree of June 18, 1859, to wit, $25,833.84, was an issue in the case of Jane L. Gordon, as administratrix, against Mary W. Gordon *et al.,* and that the question of this liability was determined and settled by the settlement and the consent decree had in said case, and that the claimants in the present case were either parties to said proceeding, or subsequently derived their interest from those who were parties thereto.

2. "That it appears that the amount realized from the sale of the negroes belonging, respectively, to Jane L. Gordon and Mary W. Gordon, was by decree of the Court paid over to Robert T. Gordon, as trustee, the principal being held by him and the interest to be paid over to the said Jane L. Gordon and Mary W. Gordon, respectively; and that it further appears from the evidence that the principal was never paid over by the said Robert T. Gordon. That his liability to account for said principal was necessarily involved in the settlement of his estate, which was had in the case of Jane L. Gordon against Mary W. Gordon, to which claimants, or those under whom they claimed, were parties; and that the said matter is *res judicata,* and the claimants are now estopped from raising the question of the said liability.

3. "That in so far as the value of the crops turned over to Jane L. Gordon and Mary W. Gordon, respectively, under the decree of June, 1859, were concerned, the liability of

these parties to account therefor is *res judicata* under the decree in the case of Jane L. Gordon against Mary W. Gordon, to which the claimants, or those from whom they derived their interests, were parties, wherein it was adjudged that said crops were the products of the life estate after it came into possession of the life tenants and that the life tenants are not chargeable therefor in favor of the remaindermen.

4. "That Jane L. Gordon cannot be held liable for the payments alleged to have been made to her by Robert T. Gordon, to wit: $857, on March 27, 1858; $1,550, on February 11, 1859; $915, on April 11, 1859—upon the following grounds: (a) That it appears that the said payments were on account of interest to which she was entitled absolutely; (b) the said payments were made prior to the decree of June, 1859, and must be assumed to have been settled or accounted for in said proceeding.

5. "That Mary W. Gordon cannot be held liable to account for the payments made to her by Robert T. Gordon prior to June, 1859, as follows, to wit: $857, March 27, 1858; $1,550, February 11, 1859; $130, March 1, 1859; and $915, on April 15, 1859—for the following reasons: (a) That it appears that the said payments were made on account of interest, to which she was entitled absolutely; (b) the said payments were made prior to the decree of June, 1859, and must be assumed to have been settled or accounted for in said proceeding.

6. "The payment made to Jane L. Gordon and Mary W. Gordon, respectively, by Robert T. Gordon, of $1,120, on June 1, 1860, should be assumed to be on account of the balance due these parties respectively by the decree of June, 1859, or else on account of interest on the funds held in his hands and on account of the crops produced during the year 1859, and that no part of said sum should be charged against said parties as on account of principal, especially in view of the fact that the principal was ordered by the Court to be held by the trustee.

7. "That the subsequent payments made by R. T. Gordon to Jane L. Gordon and Mary W. Gordon, respectively, should be held under the evidence to have been on account of interest on one or both of the funds in the hands of Robert T. Gordon, especially in view of the fact that the decree of the Court had directed him to retain the principal, and to pay them the interest.

8. "That in so far as the mules, cattle, farming implements, etc., assigned to Jane L. Gordon and Mary W. Gordon, respectively, are concerned, it appears from the testimony that the same either died or were worn out in the use, without negligence on the part of the life tenants, and that they are not accountable therefor to the remaindermen."

Robert C. Gordon died during the year 1852, leaving of force his last will and testament, which was duly admitted to probate in the office of the ordinary for Abbeville district, Robert T. Gordon, one of his sons, qualifying as executor thereof.

By the eighth clause of that instrument the testator provided as follows: "(8) I give and bequeath unto my four children in equal shares, to wit: James Gordon, Robert Thomas Gordon, Mary Watt Gordon and Jane Eliza Gordon, all my negroes, stock of every kind, plantation tools, the balance of my money on hand, bonds, notes and all interest and residue of my estate of every description for and during their natural lives, with remainder to such child or children as either of them should leave living at the time of his or her death, respectively as to his or her share, and if either of my said four children should die without leaving issue living at the time of his or her death, then his or her share to go to the survivors, and if the last survivor should die without leaving issue living at the time of his or her death, then I give the estate and property hereby given to them to my other children herein named, share and share alike, subject to the same limitations as is provided in bequests to them respectively."

By a construction of this clause by this Court (32 S. C., 580, 11 S. E., 334) it was held that upon the death of Jane Eliza Gordon (known also as Jane L. Gordon) and Mary Watt Gordon, without issue then living, the property bequeathed to them therein would become that of the estates of Rosa Ann McCord and Rebecca Wilson, two of the other daughters of the testator. Jane Eliza Gordon and Mary Watt Gordon died, leaving no issue at their death. Mary Watt Gordon predeceased Jane Eliza, and by will bequeathed and devised to her all the property of which she, the testatrix, died possessed. Upon the death of Jane Eliza Gordon, this suit was brought by her heirs at law for the partition of her estate among them.

The appellants herein, L. T. Miller, as administrator of the estate of Mary V. Miller, a daughter of Rebecca Wilson, J. W. Kellar, as administrator of the estate of Louise R. Kellar, a daughter of Rebecca Wilson, and M. Harvey Wilson, as administrator of the estates of Elizabeth C. Douglass, a daughter of Rebecca Wilson, and of the estates of J. T. McCord and Mrs. Elizabeth McGuirk, children of Rosa Ann McCord, upon petitions, were duly made parties to this action, and by their several answers claimed that the estate of Jane Eliza Gordon was accountable to them, as remaindermen, for property alleged to have been received by her and Mary Watt Gordon under the eighth clause of the will of Robert C. Gordon, *supra.* The Circuit Court (Judge Purdy) dismissed the claims of the appellants, for the reason that, by the terms of a decree of Judge Norton "taken in connection with the pleadings, the testimony, the exceptions to the master's report, and the exceptions to the first decree of Judge Norton, it appears that all the matters attempted to be brought up by the answers of claimants herein have been conclusively settled by the former decree of Judge Norton, and are *res judicata.*" The decrees of Judge Norton referred to in the decree of Judge Purdy were made in the case of Jane Eliza Gordon, as administratrix of the estate

of Robert T. Gordon, deceased, v. Mary Watt Gordon *et al.;*
the suit having been brought by Jane Eliza Gordon, as such
administratrix, for the settlement of the estate of her intes-
tate, Robert T. Gordon.

In the year 1858, Robert T. Gordon, as executor of the
will of Robert C. Gordon, filed his bill in equity, among
other things, for the partition of the property bequeathed
under the eighth clause of the will of Robert C.
Gordon, *supra,* to which he (James Gordon),
Jane Eliza Gordon and Mary Watt Gordon
were entitled in equal proportions. On the return
of the commissioners to the writ in partition it was
ordered and decreed, by decree dated June 18, 1859,
among other things as follows: "Second, it is further
ordered and decreed that Robert T. Gordon, as executor of
the will of Robert C. Gordon, deceased, do hold the amount
of the money in his hands belonging to the estate of his said
testator, viz., the sum of $25,833.84, as follows, to wit:
Subject to the further order of the Court." There is no
evidence tending to show that any order of the Court was
ever made directing or authorizing the payment of any
part of this amount, the one-half of which is sought by the
appellants herein to be recovered from the estate of Jane
Eliza Gordon.

In the suit of Jane Eliza Gordon, as administratrix of the
estate of Robert T. Gordon, deceased, v. Mary Watt Gor-
don *et al.,* it was referred to J. C. Klugh, Esq., master, to
state her account, as such administratrix. It is shown by
the report of the master that he determined, in that suit, the
liability of Robert T. Gordon, as life tenant, as to the one-
fourth of the property received by him under the eighth
clause of the will of Robert C. Gordon, *supra,* and that
Jane Eliza Gordon and Mary Watt Gordon sought to have
determined, in that suit, the liability of the estate of Robert
T. Gordon, deceased, to them, as life tenants; for their pro-
portion of the sum of $25,833.84, ordered by the decree of

June 18, 1859, to be held by Robert T. Gordon, as executor, "subject to the further order of the Court." And Judge Norton, by his decree, dated 26th February, 1891, recommitted the master's report for the purpose of allowing Jane Eliza Gordon and Mary Watt Gordon to have stated such liability, if any. Pending an appeal to this Court from the decree of Judge Norton of 26th February, 1891, a consent decree was made on motion of the attorneys for the children and grandchildren of Rebecca Wilson and ·Rosa Ann McCord, by which a settlement of the estate of Robert T. Gordon was concluded. In their petition to have their claims against the estate of Robert T. Gordon, deceased, for their proportion of the sum of $25,833.84, adjudicated and settled in the suit of Jane Eliza Gordon, as administratrix, v. Mary Watt Gordon *et al.*, and for which purpose the report of the master was recommitted, the petitioners, Jane Eliza Gordon and Mary Watt Gordon, allege that no part of the said sum had been received by them. It is evident that, if they had established their claims for the one-half of the sum of $25,833.84, the value of the estate of Robert T. Gordon would have been reduced by the amount of their recovery, and the interests of other parties in that estate diminished, the children and grandchildren of Rosa Ann McCord and Rebecca Wilson being certain of them. It may have been that the claimants herein, or those from whom they derived their alleged interests, preferred a certain portion of the estate of Robert T. Gordon in *praesenti* than a larger portion in *futuro*. The claimants-appellants, herein, are, therefore, estopped from now asserting their claims to the one-half of the sum of $25,833.84, and by the decrees of Judge Norton and the settlements thereunder, the same, *to that extent*, are *res judicata*.

It remains to be determined whether or not Jane Eliza Gordon and Mary Watt Gordon, or either of them, received from Robert T. Gordon, as executor, property subject to the limitations in the eighth clause of the will of Robert C. Gor-

don, for which the estate of Jane Eliza Gordon is now accountable to appellants. In the partition of the property bequeathed in the eighth clause of the will, *supra,* certain portions were assigned to Jane Eliza Gordon and Mary Watt Gordon, respectively, to wit: Certain negroes, mules, cotton, corn and other produce; sheep, hogs, plantation tools, farming implements and furniture. The negroes assigned were sold by the order of Court, and the proceeds arising from such sale paid to Robert T. Gordon, as trustee. The negroes were lost by the result of the war between the States, and for those reasons there can be no liability against the estate of either Jane Eliza Gordon or Mary Watt Gordon.

Respecting the cotton, corn and other produce assigned them, Robert C. Gordon died in 1852, and the partition among the four children named in the eighth clause of his will having been made years thereafter, these articles were products of the life estate. The records seem to make clear that the crops of 1852, as well as the crops of certain subsequent years, were expended in the support and maintenance of the family, and certainly were no part of the corpus of the estate in 1859. The estates of Jane Eliza Gordon and Mary Watt Gordon are not, therefore, accountable for such property.

In relation to the mules, etc., and farming implements, the testimony is to the effect that the animals died, and the farming implements had been worn out. There is, therefore, no liability to the appellants on this account.

The payments made to Jane Eliza Gordon by Robert T. Gordon, as executor, before the decree of June 18, 1859, amount, in the aggregate, to the sum of $3,322, and the payments made by him to Mary Watt Gordon, before that date, aggregate the sum of $3,452. The appellants contend that these payments constitute a part of the principal, and therefore, subject to the limitations of the eighth clause of the will, *supra,* for which the estate of Jane Eliza Gordon

is now liable.   In the petition (bill in equity) of Robert T. Gordon, as executor, he alleged, among other things, that, "the farms have more than supported the family and there has been an increase in the negroes. * * *" And in his account it is shown that he was due Jane Eliza Gordon and Mary Watt Gordon, each, from that source $3,451.40¾; and, by the decree of June 18, 1859, Robert T. Gordon was ordered to pay Jane Eliza Gordon $3,446.76, and to Mary Watt Gordon $1,568.39, and James Gordon was ordered to pay to Mary Watt Gordon $2,012.37, with interest, the said amounts to be held by each of them absolutely.   There is no testimony showing that these amounts were paid *after* the decree of June 18, 1859; and the payments made before that date may reasonably be concluded to have been made on account of the amounts due each of them from their interest in the proceeds of the farms, and to which they were entitled absolutely.   Robert T. Gordon was liable to Jane Eliza Gordon and Mary Watt Gordon for the income from money in his hands for them, and the other payments —$1,460.72 to Mary Watt Gordon, and $1,421.75 to Jane Eliza Gordon—it is reasonable, to presume were made on account of income received by him for each of them, and to which each was entitled absolutely.

The household articles belonging to the estate of Jane Eliza Gordon, and subject to the limitations of the eighth clause of the will of Robert C. Gordon, *supra,* were sold by her administrator, M. H. Wilson, the proceeds of the sale amounting to $158.40, and to this fund the appellants are entitled, and the decree of his Honor, Judge Purdy, is modified accordingly.

It is, therefore, the judgment of this Court that the judgment of the Circuit Court be, and hereby is, affirmed, with the exception of the modification herein made, and that the case be remanded to the Court of Common Pleas for Abbeville county for such other and further proceedings as may be necessary or proper.

October 26, 1908. Per Curiam. After a careful consideration of the petition herein this Court is satisfied that no question of law has either been overlooked or disregarded; it is, therefore,

Ordered, That the petition be dismissed and the order heretofore granted staying the remittitur be revoked.

---

### 7037

### STATE *EX REL.* MAULDIN v. MATTHEWS.

Mandamus—Officers—Official Boards.—The Court may compel by mandamus an official board vested with discretionary powers to perform an act which it refuses to do in consequence of a conclusion it has reached without any foundation in the facts before it, which act in the opinion of the Court is capricious and arbitrary. Here the Court issues mandamus to the board of pharmaceutical examiners requiring it to grant a license to an applicant holding a diploma from the University of Maryland and holds that under the statute defining the duties of the board it is unwarranted in holding the University of Maryland is not a reputable college because it does not require of its graduates four years' practical work.

Petition in the original jurisdiction of this Court by John M. Mauldin for writ of mandamus to require the board of pharmaceutical examiners to grant him a license to practice pharmacy.

*Messrs. Oscar C. Mauldin* and *W. Christie Benet,* for petitioner.

*Mr. W. M. Dunlap,* contra.

October 30, 1908. The opinion of the Court was delivered by

Mr. Justice Woods. The statute law of the State provides that the board of pharmaceutical examiners, consisting

of six pharmacists, elected by the pharmaceutical association of the State of South Carolina, "shall alone possess and exercise the powers of granting, withholding or vacating the license of pharmacists, apothecaries and druggists." The statute requires the board to subject every applicant to examination before issuing a license, making, however, an exception in these words: "No examination shall be required in case the applicant is a regular graduate in pharmacy from any reputable college; but such applicant shall be entitled to a license upon furnishing evidence of his graduation satisfactory to the said board and upon payment of the fee of five dollars."

At a regular examination appointed by the board, the petitioner, John M. Mauldin, appeared, presented a diploma showing his graduation from the University of Maryland, Department of Pharmacy, otherwise called Maryland College of Pharmacy, and, without claiming the benefit of the exception as to college graduates, offered to take the examination. The board excluded him from the examination on the ground that he had not complied with the board's requirements as to conditions of granting a license, that the applicant "had served not less than four years with a druggist or apothecary." Thereafter, the petitioner presented his diploma, tendered the fee of five dollars and demanded a license without examination as a regular graduate in pharmacy from a reputable college. His demand having been refused, the petitioner now applies to this Court for a writ of mandamus requiring the board to issue to him a license. The board, by its return, alleges that it cannot be compelled by mandamus to issue the license, because it acted in a judicial capacity in refusing it, on the grounds that the applicant is without sufficient experience, and that he does not hold a diploma from a reputable college. The board further alleges that it does not wish to reflect upon the University of Maryland, but it holds it not to be a reputable college, because:

"(1) That it does not require as a prerequisite to receiving its diploma that the candidate shall have had such practice and experience in drugs, etc., as to make it safe to the public for him to practice pharmacy in the State of South Carolina; and,

"(2) That said college only requires two terms of six months each for said candidate to study and receive his diploma, which period and course of study are too short and inadequate to properly fit any person to practice pharmacy."

In the *State ex rel. Smith* v. *Matthews,* 77 S. C., 357, 57 S. E., 1099, it was held the statute confers on the board of examiners the power to determine whether the college from which the applicant graduated is reputable, that the power involves the exercise of discretion not subject to control or review by mandamus, except where it clearly appears the board has failed to exercise reasonable discretion and has arbitrarily refused a license. The general rule is everywhere recognized that the writ of mandamus will not issue to control the judgment or discretion of a public officer, but only to require the performance of a plain, ministerial duty. *State ex rel. Fouche* v. *Verner,* 30 S. C., 277, 9 S. E., 113; *State* v. *Whitesides,* 30 S. C., 579, 9 S. E., 661; *State ex rel. Burnett* v. *Burnside,* 33 S. C., 276, 11 S. E., 787; *Abbeville* v. *McMillan,* 52 S. C., 60, 29 S. E., 540.

Whether the courts can control the action of officers or official boards, vested with discretionary power, when they refuse to act in consequence of a conclusion they have reached, which is without any foundation in the facts before them, and, therefore, in the view of the Court, capricious or arbitrary, is a question of some difficulty. But it must be answered in the affirmative, on principle as well as authority. This was the view indicated, not only in *Smith* v. *Matthews, supra,* and *Commissioners* v. *Lynah,* 2 McCord, 170, but by Lord Mansfield in *Rex* v. *Askew,* 4 Burr, 2186, 16 Eng. R. Cases, 760, where the application was to compel the admission of a physician to practice; and it is in accord with the

weight of authority.  *Ex parte Burr,* 9 Wheat, 529, 6 L.
Ed., 152; *Ex parte Virginia,* 100 U. S., 339, 25 L. Ed.,
676; *Ex parte Bradley,* 74 U. S., 364, 19 L. Ed., 214; *At-
lanta* v. *Wright* (Ga.), 45 S. E., 994; *St. Louis* v. *Mfg. Co.,*
139, Missouri, 560, 61 Am. St., 474; *Wood* v. *Strother,* 76
Cal., 545, 9 Am. St., 249; *Ill. State Board Dental Exam-
iners* v. *People* (Ill.), 13 N. E., 201.

The courts should exercise, however, the utmost circum-
spection not to substitute their own discretion for that of the
officer or board, whose refusal to act is under consideration;
and to interfere by mandamus only when the facts so clearly
show the duty of the officer or board to act, that there is
really no room for the exercise of reasonable discretion
against the doing of the act which the Court is asked to
require performed.   In other words, the courts should inter-
pose only where it clearly appears that the officer or board
refuses to perform official duty, or so misconceives official
power or duty that the purpose of the law will be defeated.
The practice of pharmacy being a legitimate and useful bus-
iness, it was clearly not within the legislative intent that any
citizen should be excluded from it by the arbitrary will of the
board of examiners.   The board subjects itself to being held
within its duties by mandamus when it so misconceives its
duties and power that its exactions amount to imposition on
the applicant of terms and conditions not contemplated by
the statute.

The statute provides that a regular graduate in pharmacy
from any reputable college shall be *entitled* to a license.
The evidence is full and conclusive that the Maryland Col-
lege of Pharmacy is held in high esteem by physicians and
pharmacists.   Indeed, we do not understand the respond-
ents seriously to question that this is a fact.   But their
position is that they believe it unsafe for the public for one
to compound drugs, who has not had at least four years' of
such practical experience as service for that period under a
druggist or pharmacist would give; that they should not

recognize as reputable a college which does not require practical experience in its laboratories or under a pharmacist, either or both together, for a period of four years; that the Maryland College of Pharmacy does not require that period of service under a druggist or in their laboratory, but only two terms of study and laboratory work of eight months each; and, therefore, they cannot recognize that college as reputable. Clearly, the respondents, in taking this position, have misconceived their duty and power. It was shown at the hearing that there is ground for the difference in opinion among pharmacists and colleges of pharmacy as to the value of four years' service in a drug store before graduating in pharmacy. The undisputed evidence was that the University of Michigan, Vanderbilt University, Northwestern Chicago, Cleveland School of Pharmacy, Albany College of Pharmacy, New York College of Pharmacy (Department of Columbia University), and National College of Pharmacy at Washington, D. C., do not require the four years' service insisted on by the respondents, their reason being that the time is better spent in acquiring general knowledge in school or college. Some other colleges of high reputation, like the University of Virginia, still require the four years' practical work.

The question is not whether Maryland College of Pharmacy ought to have all the requirements that the respondents think essential to make capable pharmacists. The statute does not confer on the board of pharmaceutical examiners the power to exact of a college compliance with its own standards. On that point the General Assembly has assumed the responsibility of danger to the public, and has directed that licenses be issued to graduates of reputable colleges—that is, colleges of whose character those of the public, having general acquaintance with the subject, entertain a good opinion. Maryland College of Pharmacy, being a college of which such good opinion is entertained, is a reputable college, the board of examiners had, therefore, *no discretion to refuse*

to issue the license to the petitioner, who is one of its graduates.

It is, therefore, ordered, That the writ of mandamus do issue requiring the respondents, constituting the board of pharmaceutical examiners, to issue to the petitioner a license as a pharmacist, upon payment by him of a fee of five dollars.

MR. JUSTICE GARY *did not sit in this case.*