13232

WALKER ET AL. v. GRICE
KANAPAUX ET AL. v. McDONALD
SCHMANCKE ET AL. v. MOORER

(159 S. E., 914)

*Messrs. John I. Cosgrove* and *R. E. Whiting,* for petitioners.

*Messrs. George E. Grimball* and *J. Waites Waring,* for respondents.

August 29, 1931.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

In each of the above-entitled cases, there is an application to this Court, in its original jurisdiction, for a writ of mandamus. By consent, all three of the cases were heard together, and we dispose of all of them in this one decision.

The case of *Walker et al. v. Grice,* and that of *Kanapaux et al. v. McDonald,* are identical in nature and for that reason will be discussed together.

The Democratic Party of the City of Charleston is reorganized every four years by meetings of ward clubs throughout that city. At these club meetings, there are elected, in addition to the regular officers, an executive committeeman and delegates to a city convention, which thereafter meets and adopts the constitution and rules of the party for the ensuing four years. By a provision of the constitution, the party is operated and controlled by an executive committee, twenty-four in number. On this committee, the constitution adopted by the convention confers certain powers and duties. Among these are the appointment of its officers (except the chairman and vice chairman, who are elected by the convention), and the operation of the party machinery in an election year.

At the convention of the party in May, 1931, a constitution and set of rules were adopted and the election of the executive committeemen of the several clubs approved. The executive committeemen thus approved serve for a term of four years.

At its first meeting held on May 7, 1931, the executive committee met for the purpose of arranging for a municipal primary for the selection of a mayor and other officers, and fixed October 6, 1931, as the date of the primary. At this meeting, the committee also selected its officers, namely, E. P. Grice, Jr., as secretary, and E. R. McDonald, as treasurer.

At a meeting held on July 23, 1931, the committee adopted a resolution revoking the appointment of Grice and McDonald and appointed in their places Edward Walker, as secretary, and W. T. Kanapaux, as treasurer. The vote of the committee on this resolution was thirteen in favor thereof, the remainder of the committee, eleven in number, refraining from voting.

Upon the refusal of Grice and McDonald to surrender their offices and the record books and funds thereof, the two suits for writs of mandamus were instituted by the majority of the executive committee against them; the newly appointed officers, Walker and Kanapaux, joining in as petitioners.

The power of appointment of its officers by the executive committee is derived from Article IV of the Constitution of the party. It provides as follows:

"The City Executive Committee shall consist of one member from each club to be elected by the respective clubs.

"The executive committee, when elected, shall *appoint* its own officers (except the chairman, and vice-chairman, who shall be elected by the Convention), who shall not necessarily be members of said committee: * * * The tenure of office of the *executive committee* shall be until the first Tuesday in May of each election year, at which time the Convention shall be called together to reorganize the party."

Under this constitutional provision there cannot, in our opinion, be any question concerning the legal right of the majority of the executive committee to remove its appointees, and to replace them with other appointees of their own choosing without any reason being assigned for the removal. No term of office is fixed for the secretary and treasurer. The rule which governs in this situation is that stated in *Sanders v. Belue,* 78 S. C., 171, 58 S. E., 762, 765, as follows: "For the absolute power of removal at pleasure is incident to the power of appointment, unless the law provides duration of the official term or mode of removal. [Citing cases.] It is also well settled that, where the power to remove at pleasure exists, the appointment of another person operates as a removal of the incumbent from the time he receives notice of the appointment."

In *State v. Rhame,* 92 S. C., 455, 75 S. E., 881, 882, Ann. Cas., 1914-B, 519, the correctness of the principle declared in the *Sanders case* is recognized, although held to be

without application in the particular case. In the opinion of Mr. Justice Woods, it was said: "In *Sanders v. Belue,* 78 S. C., 177, 58 S. E., 762, this Court held that the absolute power of removal at pleasure is incident to the power of appointment, *unless the law provides duration of the official term* or mode of removal."

In *State ex rel. Acker v. Major,* 94 S. C., 472, 78 S. E., 896, the *Belue case* was again approved. See, also, *State v. Thompson,* 124 S. C., 474, 117 S. E., 717.

Where a power to remove is at pleasure, the Courts will not inquire into the cause or motive behind the removal. *Sanders v. Belue, supra.*

As the executive committee had the power to appoint Messrs. Grice and McDonald, and the appointees were at the pleasure of the committee, the committee legally had the right to revoke such appointments, and it thereupon became the duty of the incumbents to surrender their offices, together with the books, records, and funds thereof, to new appointees of the committee.

The case of *Schmancke et al. v. Moorer* comes before us on a different basis from the two discussed above. It involves the right to the custody of the enrollment books of Club 2, Ward 11.

Under the provisions of Section 313, Volume 3, Code of 1922, the municipal and county committees are required to furnish to the secretaries of the respective clubs suitable books for the enrollment of voters. In that section, there is this provision: "The enrollment books shall be kept in the custody of the secretaries of the respective clubs, at such places as shall be designated by the Municipal or County Executive Committee."

The secretaries are elected by their clubs upon organization every four years. The constitution of the City Democratic Party of Charleston in Article XII contains the following: "In the event of sickness, death, removal from the ward, or the failure in the performance of his duty of any

secretary of the club, the president of the club shall appoint a secretary from the club to fill the place permanently or temporarily as the case may be, and in the event that the president shall not do so promptly it shall be the duty of the executive committee so to do."

In addition to· this provision of the Constitution, there exists Rule XII of the committee by which authority is given for the appointment of two assistant secretaries to each ward club secretary, who, in the absence of the secretary, is authorized to have custody of the books and conduct the enrollment.

At a meeting of the City Democratic Executive Committee on July 23, 1931, a resolution was adopted declaring that the secretaries of some fifteen clubs had failed in the performance of their duty in the conduct of the enrollment now in progress in the City of Charleston, and further declaring that the presidents of these clubs had failed promptly to appoint other secretaries, either permanently or temporarily, as required by this provision of the constitution. It was recited by this resolution that the books of enrollment had been opened for a period of ten days, and that for that period there had existed the conditions found and declared by the committee, the failure of the secretaries to perform their duties. Thereupon the committee, acting through the majority, undertook, pursuant to the above-quoted article of the party constitution, to appoint other secretaries in the places and stead of those declared to be delinquent.

Among those declared to be delinquent by this resolution was the secretary of Club 2, Ward 11, in whose place and stead was appointed George Schmancke, petitioner herein.

Thereafter, Schmancke, joining with a majority of the executive committee, filed petition for a writ of mandamus against Moorer.

In substance, his petition recites the above facts. It is his claim that upon these facts, Moorer, the assistant secretary, is unlawfully keeping custody of the enrollment books of his particular club from him.

The respondent, Moorer, sets up a claim to the enrollment books not as secretary of the club, but as an assistant secretary, appointed by the chairman of the committee pursuant to Rule XII, above referred to. No answer, return, or affidavit has been filed by the secretary, who was removed or attempted to be removed, or by the president of the club, controverting in any way the declaration of the executive committee that the secretary had failed in the performance of his duties, and that the president of the club had failed to make the appointment of a new secretary. Neither the president nor the former secretary, who was elected by the club to his office at the proper time, was made a party to the proceedings here.

There is nothing in the record before this Court showing that the secretary attempted to be removed was given any opportunity to show that he had been performing his duties, and there is nothing to show that the president of the club was advised of the failure of the secretary to perform his duties if he did so fail. The election of the club secretary was a right given to the club. The right to appoint his successor, in the event of the failure of the elected secretary to perform his duties, in the first instance was a power conferred upon the president of the club. The executive committee, before it could appoint a new secretary for any club, had to be convinced not only of the failure of the secretary to perform his duties, but should have also had sufficient grounds to hold that the president of the club, upon being acquainted with the fact of the secretary's failure, had neglected to perform his duty in the appointment of another secretary. A removal of a regularly elected secretary for "failure in the performance of his duty" is a removal for cause. A removal for cause operates as a limitation upon the power to remove, and, in our opinion, the party to be removed, or attempted to be removed, is entitled to a hearing as to the charge that he has failed to perform his duty. 26 Cyc., 260. See, also, *State v. Courtenay*, 23 S. C., 180. In

the absence of the secretary of the club, or upon his failure to perform his duties, the right to the custody of the enrollment books of the club, under the rule referred to above, vests in an assistant secretary. The main purpose of all these rules, both statutory and those of the party, is to give the voters the right to properly enroll within the legal time so they may become qualified to participate in the election. Under the law, it makes no difference if the voter properly enrolls in the presence of the secretary or the assistant secretary.

In this cause, we are not deciding any right of the secretary of this club, who was removed by the executive committee, for the main reason, if no other, that he is not a party to this proceeding. We hold, however, under the view we take of the rules of the party, in connection with the statutory enactments, that there has not been a sufficient showing that the petitioner, Schmancke, is entitled to the enrollment books against the assistant secretary, who has clearly been appointed in accordance with the rules of the party, which rules are not violative of the statutory law. Let it be understood, also, that we are not deciding the right of the removed secretary to the books of enrollment. Neither do we decide any of the matters relating to the removal, or attempted removal, of the other secretaries of the several clubs to which we have heretofore referred, for the very good reason that no action has been taken against any of them, and in no way have they been made parties to the proceedings before this Court. We are simply holding that on the petition brought by Schmancke and the other petitioners in this particular proceeding, that there has not been a sufficient legal showing to justify the Court in ordering the assistant secretary, Moorer, to turn the books of enrollment over to Schmancke.

We are unable to agree with the suggestion that we are without power or authority "to throw around the municipal primary in Charleston the protection of the Courts." We

find both statutory and judicial recognition of primary elections and also of the party organization provided for the conduct of such primaries.

The Court is concerned only with the legal rights involved —not with political situations. The very justification for the existence of the Courts is that controversies may be determined by resort to the orderly processes of the law rather than by resort to force. Matters of party organization are quite as likely as matters of business organization to engender differences of opinion and heated controversy. Should the Court refuse its aid to maintain the orderly administration and conduct of party organization for municipal primary elections, resort to force in the settlement of controversy would be a not unlikely consequence.

It has, therefore, been long recognized in this State, as the province of the Court to see that the established principles of law and order in the conduct of party organizations be maintained, and associations or groups of individuals, although organized on a political basis and having a political nature in purpose, are subject to the jurisdiction of the Courts.

The case of *Ex parte Sanders,* 53 S. C., 478, 31 S. E., 290, decided at chambers by Chief Justice McIver, involved a petition presented in the original jurisdiction of this Court by a candidate in the democratic primaries of 1898 for nomination for the office of sheriff of Berkeley County. The order issued in the case by Chief Justice McIver, after quoting from the Act of 1888 (20 St. at Large, p. 10), relating to primary elections, which provided "that every political primary election held by any political party * * * for the purpose of choosing candidates for office * * * shall be presided over and conducted in the manner prescribed by the rules of the political party," declared the authority and duty of the Court to take jurisdiction in the case in the following language: "It is evident from the above extract that the legislature intended to give primary elec-

tions a legal status, and to place them, together with the entire party machinery, under the protection of the Courts, not only for the purpose of punishing frauds, but also for the enforcement of rights acquired therein."

Section 285, Volume 3, Code of 1922, contains a general provision for the regulation of primary elections as follows: "Every political primary election held by any political party, organization, or association, for the purpose of choosing candidates for office, or the election of delegates to conventions, shall be presided over and conducted in the manner prescribed by the Constitution and rules of the political party, organization or association holding such primary election by managers selected in the manner prescribed by such Constitution and rules."

Shortly after this statute was passed in 1905, the Court was called upon in the case of *Holt v. Democratic Executive Committee of Town of Gaffney*, reported in 79 S. C., 263, 60 S. E., 659, 660, to determine a primary election controversy arising out of the rules for conducting the primary election in the Town of Gaffney for nomination of municipal officers. In a *per curiam* decision, the Court assumed jurisdiction and decided the controversy, holding "that the Democratic Executive Committee of the Town of Gaffney committed error of law in deciding under the rules of the party the petitioner had not filed his pledge and paid his assessments within the time required by said rule." See, also, *Moore v. Griffin,* 81 S. C., 393, 62 S. E., 545.

The Act of 1915 (29 St. at Large, p. 163), Sections 286-300, Volume 3, Code of 1922, contains further regulations provided, as stated in Section 287, "for the purpose of the primary elections held by any political party, organization or association for the purpose of choosing candidates for office or the election of delegates to conventions."

Still another Act of 1915 (29 St. at Large, p. 81), Civ. Code, §§ 311-328, provides regulations for the holding of primary elections and the organization of clubs in cities con-

taining 40,000 inhabitants or more. Where other provisions of the statutes do not govern, it is provided (Section 327, Vol. 3, Code), that "the primary election shall be conducted in accordance with the party rules."

In the case of *Raines v. Stone,* 112 S. C., 147, 99 S. E., 353 (decided May, 1919), in considering "an application for the writ of *certiorari* to review the action of the city Democratic Executive Committee of the City of Charleston in refusing to recognize O. H. Bissell as a member of that committee," the opinion points out that "the gravamen of the complaint of the petitioners is that the executive committee acted arbitrarily and contrary to law and the rules of the party." The opinion continued: "It need hardly be said that the party had the right to determine who shall compose the executive committee, how its members shall be chosen, what powers it shall exercise, and how vacancies in the committee shall be filled. *The issue here arises out of the provision made in the rules for filling a vacancy in the committee,* and the power of the committee to determine contests and make up a *prima facie* roll of delegates to the convention." (Italics ours.)

In the case of *Hyde v. Logan (Hyde v. Boykin),* also arising before this Court out of a Charleston primary controversy, reported in 113 S. C., 64, 101 S. E., 41, 44, the jurisdiction of the Court to review the actions of the city committee was questioned. The opinion of the Court, delivered by Mr. Justice Hydrick, reaffirmed the position taken by Chief Justice McIver in *Ex parte Sanders, supra,* and in this connection said: "While that decision was rendered by only one member of the Court, it was based upon sound reasons, and has been followed ever since by the Court, as will appear by reference to numerous cases since decided. *These decisions were known to the Legislature, and surely, if that body had intended to deny to the Courts a jurisdiction which they had so long and so frequently exercised, it would not have undertaken to do so in words of doubtful import, but in plain and unmistakable terms."* (Italics ours.)

It is also suggested that the rules of the convention of the Democratic Party of this State do not authorize the organization of municipal Democratic clubs for the nomination of candidates for office, and it is said that it is significant that Rule 44 of the State Democratic Party, adopted in May, 1930, now of force, making provision for the organization of municipal Democratic clubs, has specifically excluded the application of the rule to cities of 10,000 population or over. In answer to this suggestion, we call attention to the fact that the rules of the State Democratic Party cannot conflict with the enactments of the Legislature as to primary elections, whether state, county or municipal. We find no conflict between the rules of the State Democratic Party and the statutory enactments. The proviso referred to in Section 44 of those rules prevents the regulations of that particular rule from applying to cities of 10,000 or more population. Rule 8 of the State Democratic Party's rules contains a provision for the organization of Democratic clubs in cities of more than 10,000 population. It is clear that it was the purpose of the framers of the rules of the State Democratic Party to have such rules harmonize with the statutory provisions as to municipal primary elections. In our statutes we have special regulations for primaries in cities of over 10,000 population, other regulations as to cities containing 25,000 or more population, still other regulations as to cities containing a population of more than 40,000, and, finally, regulations affecting cities which have a population of more than 65,000.

The judgment of this Court is:

First, that the petitions for the writs of mandamus in the cases of *Walker et al. v. Grice,* and *Kanapaux et al. v. McDonald,* be, and the same are hereby, granted, and upon proper application to the Court the same do issue.

Second, that the petition for the writ of mandamus in the case of *Schmancke v. Moorer* be, and the same is hereby, re-

fused, and the restraining order heretofore granted in that cause be, and the same is hereby, vacated.

MESSRS. JUSTICES COTHRAN, STABLER, and BONHAM concur.

MR. JUSTICE CARTER concurs in result.