MATHEWS, Justice.
This suit involves a dispute between two factions of the Republican Party in Dade •County, Florida, and rights asserted under Chapter 103 F.S., F.S.A., and particularly Sections 103.111 and 103.121 F.S., F.S.A.
The case came on for hearing before the ■Chancellor on an amended bill of complaint .and a motion to dismiss. The Chancellor, in his order, denied the motion to dismiss .and granted a temporary injunction. Petition for certiorari was filed seeking to review that order.
It is contended by petitioner that there is no specific statutory authority giving a court of equity jurisdiction to decide the •question presented. This contention is based upon the further claim that the disputes existing are purely political and that courts of equity have always refused to interfere with factional political disputes within a Party.
The petitioner places great reliance upon the case of Joughin v. Parks, 107 Fla. 833, 143 So. 143, 306, 147 So. 273, 275. Writ •of prohibition was granted in that case and the Court held that the matters set forth in the bill of complaint “must be definite and .•specific and indicative of a- right to relief over and above a mere political right, $ ‡ >}c
The respondent claims that there is a clear distinction between “a mere political right” and rights created under a statute. He claims that primary election laws and laws concerning officers of a political party, or a committee of such party, are now recognized as a vital part of the general election machinery of the state, and that the rights, privileges, powers and duties granted or imposed by such primary election laws are important and the processes of the courts may be invoked to enforce them.
In the case of D’Alemberte v. State ex rel. Mays, 56 Fla. 162, 47 So. 489, 499, this Court said :
“Our opinion upon the point under discussion is that the rights created under our primary law are such that when violated the courts may be resorted to for their redress”.
In the case of State ex rel. Merrill v. Gerow, 79 Fla. 804, 85 So. 144, 146, this Court held:
“The rights acquired and the duties imposed by the primary election laws are valuable and important, not only to those who acquire them under the law, but to the entire people of the state. Upon the manner in which these powers and duties are performed depends, to an appreciable degree, the welfare of the state. In many states a person nominated as a candidate is almost invariably elected to fill the office, or, where the office is an appointive one, the person chosen at the primary election usually receives the appointment. The rights acquired under a primary election law are therefore of the same nature as those acquired under the general election laws, and to deprive a person of the rights acquired by the former is equivalent to depriving him of his right to hold the office. In the case of a member of a state, or other party executive committee, where the rights and privileges become vested directly by the votes of *575 the electors at the primary, the analogy between the holder of such position and other state or county officers is even stronger. Primary election laws and laws governing general elections are so interwoven that together they comprise the election machinery of the state, and the rights, duties, privileges, and powers granted or imposed by one are equivalent to those granted or imposed by the other, in so far as the processes of the courts may be invoked to enforce or protect them.”
See also State ex rel. Watkins v. Ferandez, 106 Fla. 779, 143 So. 638, 86 A.L.R. 240; State ex rel. Page v. Dannelly, 139 Fla. 320, 190 So. 593; State ex rel. Feltman v. Hughes, Fla., 49 So.2d 591.
The petitioner cites the case of Alexander v. Booth, Fla., 56 So.2d 716, as authority for this 'Court to refuse to intervene into internal Party affairs in the absence of specific statutory authorization. That case is not susceptible of the interpretation assigned to it by petitioner. The purpose of that suit was to determine the manner or method of selecting, or electing, National Committeemen and National Committeewomen and Delegates to the National Republican Convention. Rights were asserted under Section 103.101 (-7), F.S., F.S.A., the same being part of the election code. The question determined in that case was whether or not the National Committeemen and National Committeewomen and the Delegates to the National Republican Convention should be elected by the members of the Republican Party, either in a primary or in some other method or .manner, or whether they should be elected by the State Executive Committee of the Party. In deciding the question, the Court construed subsection (7) of Section 103.101 F.S., F.S.A. The Court held that the sole and absolute discretion of determining the manner or method of electing a Party officer was vested in the State Executive Committee of the Party and that the exercise of such discretion is beyond the control or regulation of the courts. The Court further held that the right to exercise such discretion was vested in the Committee by the statute.
In this case the amended bill of complaint alleged that the Dade County Republican Executive Committee was a political committee and formed pursuant to and was governed by the laws of the State of Floridá, and in particular, Sections 103.111 and 103.121 F.S., F.S.A., the same being part of the election code; that Brewer was duly elected and was tire acting and lawful Chairman of the Dade County Republican Executive Committee; that Section 103.111 F.S., F.S.A., provides for the office of Chairman and specifies the manner in which said Chairman shall be elected by the members of the Committee, and the manner in which a vacancy in said office of 'Chairman shall be filled. The bill then quotes from Section 103.121 F.S., F.S.A., and alleges that pursuant to said section the Dade County Republican Executive Committee, at a call meeting, adopted a constitution and by-laws by more than two-thirds vote to govern such Committee; that subsequent thereto and in accordance with the statutes above mentioned, at a duly called meeting, at which a quorum was present, held on October 10, 1952, an election was held to fill the vacancy created by the resignation of John Booth as Chairman of the Committee; that the Committee was composed of 130 members and 95 were present; that a roll call vote was duly had on candidates which resulted in 62 votes for Brewer, 22 for Worton, 10 as passing, and 1 not voting; that Brewer accepted the said office and was the duly constituted, acting and authorized Chairman of said Committee, vested with all the powers, privileges and franchises of said office. The amended bill further alleges that one Jane Shelly was formerly Vice-Chairman of the Committee but had not attended any meeting since October 10, 1952; that under the guise of Vice-Chairman she called a meeting of the Committee to be held on April 9, 1953, which was the same time that Brewer, as Chairman, had called a meeting to be held at a different place in Miami; that she had attempted to exercise other authority as Vice-Chairman of the Committee, had given newspaper interviews and generally interfered with the powers vested in Brewer. It is then alleged that at the meeting called by her on April 9, *576 1953, those present did not constitute a quorum but only constituted a small minority and that the vast majority of the Committee assembled at the meeting called by Brewer; that the meeting called by Jane Shelly was presided over by her and a so-called election was held whereby Worton was elected as Chairman of the Committee, although no vacancy existed; that the meeting was unlawful and there was no authority to elect a Chairman at such meeting; that after his so-called election, Wor-ton called meetings of the Committee and presided over same and the petitioner acted as. Vice-Chairman. It is further alleged that at a meeting duly held at the Republican Headquarters in Miami on May 18, 1953, where more than two-thirds of the full Committee were present, the petitioner was removed as Vice-Chairman by unanimous vote; that’ Worton has recently relinquished all claim to the office of Chairman, and that the petitioner is still claiming to be Vice-Chairman, and assumed the leadership of the said Committee and was at the time of the filing of the suit illegally acting on behalf of the said Committee as officer thereof. Various acts of the Vice-Chairman are alleged to have been committed whereby she claimed to be an officer of the Committee. It was then alleged that because of all of the confusion, there exists considerable uncertainty in the minds of the Committee and of the respondent as to his status .under Section 103.111 F.S., F.S.A. The amended bill then prays that the Court decree that Brewer was elected Chairman of the Committee in full compliance with Section 103.111 F.S., F.S.A., and was the lawful Chairman at the time of the filing of the suit; that Jane Shelly was duly removed as provided by law as Vice-Chairman of the Committee and that she 'has no lawful right to call meetings of the Committee; that she be restrained and enjoined from exercising any rights, prerogatives, duties, privileges, powers or functions, to be had or done by the Chairman or Vice-Chairman of the Republican Executive Committee.
The rights claimed by Shelly and Brewer are rights created by Sections 103.-111 and 103.121 F.S., F.S.A., and the manner or method of electing a Chairman and Vice-Chairman of the Dade County Republican Executive Committee is regulated by law. Any of the processes of the Court are available to any person holding an office of a political party created by the sections in question of the Florida Statutes, being part of the election code. State ex rel. Merrill v. Gerow, supra.
It also appears in this case that two persons are interested in the subject matter and have doubts as to their rights, status, or other equitable or legal relations which are affected by a statute. The conflicting claims appear to be genuine. It is proper to have such rights and questions determined as provided for by Chapter 87 F.S., F.S.A., with reference to declaratory decrees, judgments and orders.
The motion to dismiss admitted all well-pleaded facts and allegations of the amended bill of complaint and for the purpose of a temporary restraining order it was not necessary to take any testimony in support of the sworn bill of complaint. The defendant-petitioner has filed no answer but may do so, at which time, she may offer testimony or evidence in refutation of the facts alleged in the amended bill of complaint and in support of her answer. Other minor questions have been presented and we find them to be without merit and any discussion of them to be unnecessary.
The petition for writ of certiorari should be and the same is hereby denied.
THOMAS, Acting Chief Justice, and SEBRING and DREW, JJ., concur.