THE STATE OF FLORIDA UPON THE RELATION OF J. EUGENE MERRILL, *Relator*, v. DANIEL T. GEROW, *Respondent*.

Opinion Filed May 13, 1920.

1. *Quo Warranto* will not lie except to test the right of a person to hold an office or franchise or exercise some right or privilege the peculiar powers of which are derived from the State.

2. When rights are created by the primary law that mandamus cannot enforce, and wrongs done that can only be reached by other processes of the court, it is the duty of the court to grant such processes.

3. The rights created under our primary laws are such that when violated the courts may be resorted to for their redress.

4. The primary law has created certain rights, and vested certain persons with privileges, duties and powers which they may perform and enjoy, and where these privileges and duties are usurped by another, *quo warranto* will lie to protect against usurpation.

5. Any of the processes of the court that would be available to a person holding an office under the general election laws are available to one who has acquired rights, or upon whom duties are imposed by the primary election laws that are analogous to the rights and duties of officers.

6. Primary election laws and laws governing general elections are so interwoven that together they comprise the election machinery of the State, and the rights, duties, privileges and powers granted or imposed by one are equivalent to those granted or imposed by the other in so far as the processes of the courts may be invoked to enforce or protect them.

7. The rights and powers conferred and granted by the primary election law, are limited to those political parties which at the general election for State and County Officers then next preceding a primary, polled more than five per cent. of the entire vote cast in the State.

8. A political party that polls more than five per cent. of the vote cast in a general election acquires the status of the political party under the provisions of Chapter 6469, but it loses that status unless it polls more than five per cent. of the total vote cast in the general election then next preceding a primary.

A case of original jurisdiction.

Application for writ denied.

*Herbert L. Anderson* and *Fred T. Myers,* for Relator;

*Lake Jones,* for Respondent.

BROWNE, C. J.—An application for a writ in the nature of a *quo warranto* was instituted by J. Eugene Merrill against Daniel T. Gerow. The Attorney General refused to institute the proceedings in the name of the State and the claimant filed the information in his own behalf, setting up his claim. The petition set out in substance that Daniel T. Gerow has since the 20th of January, 1920, used and still uses without any warrant, charter or grant the office of Chairman of the Republican State Executive

Committee of Florida, "and is exercising the franchises, privileges and rights of said office, which said office the said Daniel T. Gerow during all the time aforesaid and now has usurped and still usurps."

It appears further from the petition that in the general election of 1916 the Republican Party polled more than 5% of the entire vote cast in the State, and that on the 4th day of June, 1918, the Republican Party held a Primary Election at which time a State Executive Committee of the Republican Party was elected, and that the Party within the time fixed by the provisions of Chapter 6469, Laws of Florida, met, was organized and elected a Chairman, a Secretary and other officers, and that the relator was elected Chairman of said State Executive Committee, and that since his election he has been and is now entitled to enjoy the rights, privileges, franchises of said office; that Daniel T. Gerow claims title to the same office by virtue of his pretended election thereto by a pretended State Convention of the Republican Party, held at Palatka, Fla., on January 29, 1920, or by virtue of a pretended election to the office of Chairman of the Committee by a pretended State Committee which Committee was elected at the Republican State Convention held on the 29th of January, 1920.

The application for the writ after reciting that the Republican Party polled more than 5% of the entire vote cast in the State at the General Election in 1916, alleges: "That said Republican Party being a political organization within the State of Florida continued to be and remain a political party within the meaning and purview of said statute 6469, Laws of Florida, until after the holding of the general election within said State which was held during the month of November, 1918, and that at said

general election so holden within the State of Florida during the month of November, 1918, said Republican Party nominated no candidates, and no candidate nominated by said Party or claiming to represent said Party received five per centum of the total votes cast in said General Election in the month of November, 1918."

In response to the rule to show cause why the information in the nature of *quo warranto* should not issue, the relator filed an answer setting up several grounds of defense. The only ones that it is necessary for us to consider are those that challenge the right of relator to the writ on the ground that in 1918 the Republican Party of the State of Florida ceased to be a Party within the meaning and under the laws of the State of Florida.

It is well settled that *quo warranto* will not lie except to test the right of a person to hold an office or franchise or exercise some right or privilege the peculiar powers of which are derived from the State.

In State *ex rel.* Attorney General v. Jones, 16 Fla. 306, this court said:

"The pilot is an instrument of the law, a means created and employed by the sovereign to promote commerce, and to such end is invested with certain powers and authority as to navigation. This power and authority is vested in him by the government as a means or method through which its right and duty to prescribe rules of navigation, (one of the essentials to general well regulated commercial intercourse), is exercised. This power is the result of an exclusive grant to him and his class by the government. A particular method for his appointment is prescribed, qualifications to constitute eligibility to appointment are required, and the amount of the fees and tolls

that he may collect for his services is fixed by law, and not by contract. These powers appertain to the public, affect an interest of great magnitude to all commerce and commercial people, and can exist in the hands of the citizen only by virtue of legislative grant."

In D'Alemberte v. State *ex rel.* Mays, 56 Fla. 162, 47 South. Rep. 489, this court said:

"Our opinion upon the point under discussion is that the rights created under our primary laws are such that when violated the courts may be resorted to for their redress."

It is true the redress sought in that case was by mandamus, but if rights are created by the primary law that mnadamus cannot enforce, and wrongs done that can only be reached by other processes of the court, it is our duty to grant them. The primary law has created certain rights, and vested certain persons with privileges, duties and powers which they may perform and enjoy, and if these privileges and duties are usurped by another, *quo warranto* will lie to protect against usurpation; otherwise a situation would arise where a person entitled to a right created and given him by law, would be without means of protection.

Whitaker v. State *ex rel.* Pierce, 58 Okla. 672, 160 Pac. Rep. 890, is a case where the right of a person claiming to be the nominee of a political party for the office of county commissioner was tested by *quo warranto*. It was contended that the laws of the State did not permit the maintenance of an action in the nature of *quo warranto,* but the court held that it was the proper remedy.

In Roberts v. Marshall, 33 Okla., 716, 127 Pac. Rep. 703, the court held that an information in the nature of a *quo warranto* was the proper remedy against the holder

of the nomination of a political party to try the title thereto. See also Newhouse v. Alexander, 27 Okla. 46, 110 Pac. Rep. 1121, 30 L. R. A. (N. S.) 602.

Section 55, Chapter 6469, Laws of Florida, known as the primary law, provides: "All contests over the results of a primary election shall be determined according to the law applicable to like contests over the results of a general election."

We think, therefore, that any of the processes of the court that would be available to a person, holding an office under the general election laws are available to any person who has acquired rights, or upon whom duties are imposed by the primary election laws that are analogous to the rights and duties of officers.

The rights acquired and the duties imposed by the primary election laws are valuable and important not only to those who acquire them under the law, but to the entire people of the State. Upon the manner in which these powers and duties are performed, depends, to an appreciable degree the welfare of the State. In many States a person nominated as a candidate is almost invariably elected to fill the office, or where the office is an appointive one, the person chosen at the primary election usually receives the appointment. The rights acquired under a primary election law are, therefore, of the same nature as those acquired under the general election laws, and to deprive a person of the rights acquired by the former is equivalent to depriving him of his right to hold the office. In the case of a member of a State, or other party executive committee, where the rights and privileges become vested directly by the votes of the electors at the primary, the analogy between the holder of such position and other State or county officers is even stronger.

Primary election laws and laws governing general elections are so interwoven that together they comprise the election machinery of the State, and the rights, duties, privileges and powers granted or imposed by one are equivalent to those granted or imposed by the other in so far as the processes of the courts may be invoked to enforce or protect them.

But these rights or powers are not granted or imposed upon all aggregations of persons calling themselves political parties. As long as they comprise an inappreciable portion of the voters of the State, they are not political factors for good or evil, and the State takes no heed of them. But when they poll five per cent. of the votes cast in a preceding general election, then the law recognizes them as, and designates them, political parties. Sec. 2, Chap. 6469, Acts of 1913.

It must continue that status, however, else it ceases to be a political party as designated by the primary law and again becomes a mere aggregation of persons. With these, whether they call themselves by a party name or not, the State does not attempt to deal.

The rights and powers of political parties, their duty to and control by the State, and the jurisdiction of the courts over them depend entirely upon the law that gives them their status as political parties.

Section 2 of Chapter 6469 provides: "A political party which, at the general election for State and County officers then next preceding a primary, polled more than five per cent. of the entire vote cast in the State is hereby declared to be a political party within the meaning of this Act, within the State, and shall nominate all candidates provided for in this Act under the provisions hereof."

It appears from the petition for the writ and the answer to the rule to show cause why it should not issue, "that at said general election so holden within the State of Florida during the month of November, 1918, said Republican Party nominated no candidates, and no candidate nominated by said party or claiming to represent said party received five per cent. of the total votes cast in said general election in the month of November, 1918."

, This, *ipso factor,* changed the status of those persons calling themselves members of the Republican Party, from a political party within the meaning of Chapter 6469, to a mere aggregation of persons held together, perhaps by a community of political principles and interests, upon whom the primary law did not operate either to impose upon them duties or confer upon them rights or privileges.

Not being a "political party" as defined by the Act it self, it follows that those calling themselves the Republican Party have no rights under the law that the courts can enforce.

It is contended that because the Republican Party became a political party in 1916, those persons who were elected as members of the State Executive Committe at a primary election held on June 4, 1918, for a term of two years, continued as such until the expiration of their term in June, 1920, or until their successors are elected and qualified, and that the exercise, or attempt to exercise the powers, rights and privileges of such quasi-office by a person not elected in accordance with the provisions of the primary law, is a usurpation of the relator's rights. In effect, this contention is that a person elected to a position or quasi-office in a political party that has existence by virtue of a statute, continues as such quasi-of-

ficer, after the political party ceases to be such by operation of law. He may be under party law or party rules, but he is not under Chapter 6469. The Republican Party having gone out of existence as a political party in the eyes of the law, its officers, as such in the eyes of the law, went out of existence with the party. The law does not know such a political party as the Republican Party; it does not know its officers; it has no control over it, or its internal affairs.

Not being a political party as designated by Chapter 6469, it follows that this court has no jurisdiction over it or its officers, and the application for a writ of *quo warranto* must be denied.

TAYLOR AND ELLIS, J. J., concur.

WHITFIELD AND WEST, J. J., concur in the conclusion.