Hillsborough, Sept. 20, 1944. } No. 3502.

THOMAS F. O'BRIEN *v.* ENOCH D. FULLER, *Secretary of State & a.*

*William H. Craig, Maurice F. Devine,* and *Paul E. Nourie (Mr. Nourie* orally), for the plaintiff.

*Stephen M. Wheeler,* Attorney-General, and *Ernest R. D'Amours,* Assistant Attorney-General (*Mr. D'Amours* orally), for the Secretary of State.

*Robert W. Upton, Edward J. Lampron,* and *Thomas J. Leonard* (*Mr. Upton* orally), for Alphonse Roy.

MARBLE, C. J.   The defendant Roy claims that a nomination is essentially a public franchise, the right or title to which can be tested only by proceedings in the nature of *quo warranto* and that the present proceedings cannot be converted into that remedy since the Attorney-General is a necessary party thereto. However, the Attorney-General has appeared in behalf of the Secretary of State, and the present proceedings, by whatever name called, have resolved themselves into an inquiry as to which (if either) of the two principal contestants is entitled to prevail. Moreover, *mandamus* is generally held to be the "proper remedy to enforce duties with respect to nominations." Annotation, L. R. A. 1917E, 480; 18 Am. Jur. 285, *s.* 157.

It is unnecessary to decide whether the jurisdiction of the Ballot Law Commission (R. L., *c.* 33, *ss.* 96, 97) extends to questions arising in connection with nominations made by party committees to fill vacancies, for the decision of the Commission is final only as to questions of fact (see *Nelson* v. *Morse,* 91 N. H. 177),' and the questions here presented are solely questions of law. Certainly it was not the legislative intent to deny a nominee the right to apply directly to the courts for the enforcement of his legal rights where no material fact is in dispute and where expedition in the preparation of ballots is imperative.   See *Cloutier* v. *Board,* 92 N. H. 199, 202.

We are in full accord with the conclusion of the trial Court that the county committee is the proper committee to substitute a new candidate to fill the vacancy on the Democratic party ticket occasioned by the death of John Laplante.   We are not in accord, however, with the opinion of the Presiding Justice that the county committee was legally organized and that its selection of a candidate for sheriff was lawful.

It is true that where no controlling statute is involved courts are reluctant to assume jurisdiction in factional controversies within a political party but leave such matters for determination by the proper tribunals of the party itself.   20 A. L. R. 1037, and cases there cited.   Such was the situation in the case of *Attorney-General*

v. *Barry*, 74 N. H. 353. But there is here involved an express statutory provision that the party nominees and state delegates in the state convention from each county "shall elect a county committee for their party." R. L., *c.* 33, *s.* 60. In view of this statute the party itself is without authority to determine the validity of the committee's organization, and on the undisputed evidence, as recounted by the trial Court, we are constrained to hold that the county committee in the present instance was not properly elected, even if the word "elect" be broadly defined.

Where the Legislature exercises its power to define a county committee within the meaning of the election law, "only such a county committee as the legislature chooses to recognize can have any right to deal with the election machinery." *Heath* v. *Rotherham*, 79 N. J. Law, 22, 25; 29 C. J. S. 111. The statutory mandate under consideration is direct and concise: those to whom the duty of selecting a county committee is entrusted "shall elect" that committee. Voting is generally held to be a personal act which cannot be performed by an agent, and it is a fair inference from the language of section 60 that "personal execution" of the duty thereby imposed was intended. 1 Mechem, Agency, *s.* 125.

Of the forty-three persons who participated in the meeting of August 23, eighteen had not been members of the county committee in 1942. Several of that number were selected by individuals, and there is no evidence that any one of them was chosen by the formal action of any town or ward. The fact that a majority of those who had been members of the 1942 committee voted for O'Brien is immaterial: the committee of 1944, not being legally constituted, could not lawfully exercise the power of nomination. 29 C. J. S. 139. In the case of *Coray's Nomination*, 25 Pa. Co. 525, 526, it was held that where persons having no right of membership in a county committee "took part in deliberating and balloting, the committee was illegally constituted and had no power to nominate anyone or to certify a nomination."

This result makes it unnecessary to decide whether or not the meeting of August 23, some of the notices of which were not mailed until August 22, was legally called.

In order to establish his right to the writ of *mandamus* the plaintiff must show by satisfactory evidence that he is entitled to have his name upon the official ballot. *People* v. *Rose*, 211 Ill. 252, 254; *Flynn* v. *Capelli*, 54 R. I. 462, 465; 38 C. J. 666, *s.* 211. This he has failed to do.

With respect to the defendant Roy's alleged right to the nomination, the Attorney-General and Assistant Attorney-General, appearing for the Secretary of State, earnestly contend "that the official executive interpretation of section 67 by the defendant Fuller should be upheld because it is in accord with history, practice, law, and well established rules of statutory interpretation and construction."

As already stated, we subscribe to the interpretation which the trial Court has given the statute, and the fact that, in the past, state committees of the Democratic party have occasionally filled vacancies in county tickets falls far short of establishing an authoritative practical construction of the statute.

It is our conclusion that neither O'Brien nor Roy is entitled to have his name printed on the official ballot.

*Petition dismissed.*

BRANCH and BURQUE, JJ., did not sit: the others concurred.