PAUL T. WIGODA *et al.,* Plaintiffs-Appellees, *v.* WILLIAM COUSINS *et al.,* Defendants-Appellants.

(No. 58096; ▮▮▮▮▮▮▮

First District (4th Division)—September 12, 1973.

Robert L. Tucker, John R. Schmidt, and Wayne W. Whalen, all of Chicago, for appellants.

Jerome H. Torshen and Earl L. Neal, both of Chicago, (Jerome H. Torshen, Ltd., of counsel,) for appellees.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from an order entered in the Circuit Court of Cook County on July 8, 1972, enjoining and restraining the defendants herein from participating as delegates representing certain congressional districts in the State of Illinois at the 1972 Democratic National Convention which was convened in Miami, Florida, on July 10, 1972. Defendants also appeal from another order entered in the Circuit Court of Cook County on August 2, 1972, enjoining and restraining them from participating in a caucus of the Illinois delegation to the Democratic National Convention in order to elect the Illinois representatives to the Democratic National Committee.

The issues presented for review are: (1) whether the trial judge's assertion of jurisdiction over this matter contradicted the judgment of the U.S. Court of Appeals for the District of Columbia Circuit and the opinion of the U.S. Supreme Court, if they were binding and res judicata as to the issues in this case; (2) whether the trial court's action violated fundamental constitutional rights of free political association of the defendants and the National Democratic Party; (3) whether courts of equity have jurisdiction over political controversies; and, (4) whether the trial judge's public comments in this action display a gross bias against the defendants.

Pursuant to those provisions of the Illinois Election Code dealing with the making of nominations by political parties (Ill. Rev. Stat., ch. 46, § 7—1 *et seq.*), a primary election was held in the State of Illinois on March 21, 1972. At this primary election, delegates and alternate delegates to the National Nominating Convention of both the Democratic and Republican parties were elected from each of the 24 congressional districts in the State of Illinois.

The plaintiffs herein are a class of 59 individuals, including blacks, Latin Americans, women and persons between 18 and 30 years of age, who were elected in the March 21, 1972, primary election as uncommitted delegates to the National Democratic Convention from the 1st, 2nd, 3rd, 5th, 7th, 8th, 9th and 11th congressional districts. Initially, it is worthy of mention that all the plaintiffs in this appeal were required

by the Election Code to file on or before January 14, 1972, nominating petitions signed by at least one-half of one per cent of the qualified primary electors of the Democratic Party residing in their respective Districts, in order to have their names placed on the March 21, 1972, primary election ballot. No challenges to the plaintiffs' petitions were raised, and the primary election was held on March 21, 1972, resulting in the election of the plaintiffs by a majority of the qualified electors of the Democratic Party in their respective congressional districts. Thereafter, these results were canvassed, certified and reported in accordance with the respective provisions of the Election Code, culminating on April 18, 1972, in the proclamation of the Secretary of State that the plaintiffs herein were the elected delegates to the Democratic National Convention from their respective Congressional Districts.

The defendants herein were initially 10 individuals who filed a formal challenge of the credentials of the plaintiffs with the Acting Chairman of the Credentials Committee of the Democratic National Party on March 31, 1972. In their challenge the defendants allege the plaintiffs were not entitled to credentials for the Convention as they were in violation of certain guidelines which had been previously set forth in the Report of the Commission of Party Structure and Delegate Selection to the Democratic National Committee, which were thereafter incorporated into Article III, Part I, of the Call of the 1972 Democratic National Convention. Specifically, the defendants alleged in their challenge that the plaintiffs were first chosen as candidates and thereafter elected to be delegates and alternate delegates based on slate-making procedures which were neither open to the public nor had rules attached thereto to attract public participation. The defendants further alleged in their challenge that the plaintiffs were chosen to the exclusion of certain minorities, namely, blacks, Latin Americans, women, and persons between 18 and 30 years of age.

In view of the aforementioned challenge filed by the initial 10 defendants, the plaintiffs filed a lawsuit in the Circuit Court of Cook County on April 19, 1972, the first day following the Secretary of State's proclamation naming the plaintiffs as the duly elected delegates to the Democratic National Convention and also, by operation of law, the first day which the plaintiffs could so act in their elective office. In this lawsuit, the plaintiffs sought to enjoin and restrain the defendants who had filed the challenge with the acting chairman of the Credentials Committee of the Democratic National Party. A motion for a preliminary injunction was set for April 21, 1972, before Judge Donald J. O'Brien. The hearing on this motion, however, was not held on April 21, 1972, because the defendants filed a petition in the U.S. District Court for the

Northern District of Illinois removing the cause to that court on April 20, 1972. There the cause was then assigned to Federal Judge Hubert Will. Thereafter, on April 24, 1972, the plaintiffs filed a motion with Judge Will to remand the cause to the Circuit Court of Cook County on the ground that the initial removal to the U.S. District Court was improper as there was no federal question involved. Judge Will took the motion to remand under advisement and on May 18, 1972, he issued an opinion finding no basis for federal jurisdiction. Judge Will, however, also entered a 10-day stay of his findings in order to enable the defendants to appeal therefrom. Subsequently the U.S. Court of Appeals for the 7th Circuit denied any further stays of Judge Will's finding and on June 30, 1972, dismissed the defendants' appeal on the ground that there was no basis for allowing the defendants' initial removal from the Circuit Court of Cook County to the U.S. District Court for the Northern District of Illinois.

During the period between April 24, 1972, when the instant plaintiffs filed their motion to remand the original cause to the Circuit Court of Cook County, and May 18, 1972, when Judge Will entered his opinion finding no federal jurisdiction, the defendants herein commenced yet another action in the U.S. District Court for the Northern District of Illinois. In that suit the defendants herein sought to enjoin the plaintiffs herein from any further prosecution of this action in the Circuit Court of Cook County as being violative of their First Amendment rights. That cause was assigned to Federal Judge Frank McGarr, who granted the instant defendants herein a series of non-reviewable temporary restraining orders which prevented any further action in the Circuit Court of Cook County, although such further action was contrary to Judge Will's findings wherein the cause was remanded to the Circuit Court of Cook County because there was no federal question, and the Federal Court therefore lacked jurisdiction. Finally, on June 9, 1972, Judge McGarr held a trial. At the conclusion of the trial a preliminary injunction was issued barring the defendants, who are the plaintiffs in the Circuit Court of Cook County, from proceeding with this action in the Circuit Court. The injunction issued by Judge McGarr was promptly appealed to the U.S. Court of Appeals for the 7th Circuit, where a hearing was held on June 29, 1972. Following oral argument, the court, acting from the bench, reversed the injunction granted by Judge McGarr and ordered that its mandate issue forthwith so as not to delay any action in the Circuit Court of Cook County. *Cousins v. Wigoda*, 463 F.2d 603.

In an attempt to stay this mandate from the U.S. Court of Appeals for the 7th Circuit, the instant defendants petitioned Justice William Rehnquist of the U.S. Supreme Court on July 1, 1972, for a stay order. Follow-

ing the hearing, Mr. Justice Rehnquist denied the instant defendants' application for a stay, thus clearing the way for a continuation of this action in the Circuit Court of Cook County. At this point it is necessary to mention certain other situations which were transpiring during the course of the previously discussed litigation so as to cast full and proper perspective on the continuation of the instant litigation in the Circuit Court of Cook County from which this appeal arose. These other situations were the activities of the Credentials Committee of the Democratic National Party, and certain litigation which originated in the U.S. District Court for the District of Columbia.

As previously mentioned, on March 31, 1972, the original 10 defendants to this action filed a "Notice of Intent to Challenge" with the acting chairman of the Credentials Committee of the 1972 Democratic National Convention. In this "Notice" they stated their intent to challenge the seating of the 59 uncommitted delegates who are the plaintiffs in this action. Thereafter, these original 10 defendants filed a "Statement of Grounds of Challenge Against the Proposed 'Uncommitted' Delegates to the 1972 Democratic National Convention from the Districts Encompassing the City of Chicago." On May 26, 1972, almost two months after the "Statement" was filed, Cecil F. Poole, a San Francisco attorney, was appointed as hearing officer by the acting chairman of the Credentials Committee to conduct hearings on the challenge previously filed by the instant defendants. These hearings were conducted in Chicago on May 31, June 1, and June 8, 1972, with the result being the submission of the document entitled "Findings and Reports of Cecil F. Poole, Hearing Officer to the Credentials Committee" on June 25, 1972. In his report Mr. Poole concluded the plaintiffs herein were elected in violation of certain guidelines set forth in the Call of the 1972 Democratic National Convention.

On June 30, 1972, the Credentials Committee of the 1972 Democratic National Convention, having before it the report of the hearing officer, voted to sustain the findings in the report. Moreover, the Credentials Committee recommended an "alternative" delegation chosen in private caucuses held in Chicago on June 22 and June 24, 1972, be seated to the exclusion of the duly elected delegates. The "alternative" delegation was comprised of the original 10 challengers, who were the original 10 defendants herein, and 49 other individuals, many of whom were defeated candidates for election as delegates in the March 21, 1972, primary. All 59 members of this "alternative" delegation were thereafter joined as defendants in the instant action.

Subsequently, on July 10, 1972, the question of whether to seat the duly elected Illinois delegates or to accept the recommendation of the

Credentials Committee and seat the "alternative" delegation was presented to the 1972 Democratic National Convention for a vote. The Convention voted to accept the recommendation of the Credentials Committee and seat the "alternative" delegation to the exclusion of the duly elected Illinois delegation.

In mid-June, 1972, since the hearing officer appointed by the acting chairman of the Credentials Committee continually refused to consider questions of law concerning the legality of the Democratic Party Rules and Guidelines, a member of the plaintiff class, Thomas E. Keane, commenced a lawsuit against the Democratic National Party in the U.S. District Court for the District of Columbia to determine whether the guidelines upon which the plaintiff class had been challenged were constitutional. Although the original 10 defendants to the instant action were not made a party to this lawsuit, they sought to intervene and the District Court granted them leave to so intervene. Following a hearing, the District Court held three of the four guidelines upon which the challenge had been raised to be unconstitutional. On immediate appeal to the U.S. Court of Appeals for the District of Columbia, this determination by the District Court was held to be premature because no action had yet been taken by the Credentials Committee on the challenge.

As previously mentioned, the Credentials Committee did render a decision on June 30, 1972, to recommend exclusion of the plaintiff delegates. In light of this action by the Credentials Committee, the District Court for the District of Columbia on July 3, 1972, once again held a hearing and found three of the four guidelines upon which the challenge had been raised to be unconstitutional. On July 4, 1972, an appeal was again taken to the U.S. Court of Appeals for the District of Columbia. The Court of Appeals on July 5, 1972, affirmed the District Court as to the constitutionality of the one guideline which had been found constitutional and issued an injunction to prevent the plaintiffs from proceeding with the instant action in the Circuit Court of Cook County. The Court of Appeals did, however, stay its mandate for 24 hours to enable the plaintiffs to apply to the U.S. Supreme Court for a further stay. The plaintiffs applied for such a stay and also on July 6, 1972, filed a Petition for Writ of Certiorari. Following a Special Session, the U.S. Supreme Court on the evening of July 7, 1972, granted a stay of the judgment of the Court of Appeals which had enjoined the plaintiffs from proceeding with the instant action in the Circuit Court of Cook County. The Supreme Court also took the petition for writ of certiorari under advisement. *Keane v. National Democratic Party* (1972), 469 F.2d 563, *judgment stayed,* (U.S.), 34 L.Ed.2d 1.

Thereafter, following the Convention, the Supreme Court granted the

petition for writ of certiorari, vacated the judgment of the Court of Appeals, and remanded the case to the Court of Appeals for the District of Columbia to determine whether the case was moot. *Keane v. National Democratic Party, judgment vacated,* (U.S.), 34 L.Ed.2d 73, (October 10, 1972).

On February 16, 1973, the Court of Appeals for the District of Columbia held the case as remanded by the Supreme Court moot and affirmed the judgment of the District Court for the District of Columbia.

Since the U.S. Supreme Court had stayed the judgment of the Court of Appeals for the District of Columbia which had enjoined the plaintiffs from proceeding with the instant action in the Circuit Court of Cook County on the evening of July 7, 1972, the plaintiffs served notice on the original 10 defendants as well as those who had been joined subsequent to their election as members of the "alternative" delegation that a hearing on the original complaint would be held before Judge O'Brien in the Circuit Court of Cook County on July 8, 1972. At the hearing on July 8, 1972, the defendants moved for a change of venue from Judge O'Brien, and the case thereafter was assigned to Judge Daniel A. Covelli. Following a hearing, Judge Covelli entered certain findings of fact from the evidence which had been presented to him. Based upon these findings, Judge Covelli ordered the 59 defendants (each of whom had formally been represented by counsel who was present for the hearing and each of whom had thereby submitted himself to the jurisdiction of the Circuit Court of Cook County) enjoined and restrained from acting or purporting to act as a delegate to the 1972 Democratic National Convention from the particular Congressional Districts involved, or from performing the functions of such delegates in the National Democratic Convention or in its committees.

Rather than seeking an appeal from this injunction, the record reflects the defendants on July 10, 1972, were seated as delegates to the 1972 Democratic National Convention representing the 1st, 2nd, 3rd, 5th, 7th, 8th, 9th and 11th Congressional Districts in the State of Illinois and thereafter participated as such.

Following the Convention the plaintiffs filed a motion for supplemental relief in the Circuit Court of Cook County. In this motion the plaintiffs sought to enjoin the defendants from participating in a party caucus of delegates to be held on August 5, 1972, for the purpose of selecting the Illinois representatives to the Democratic National Committee. On August 2, 1972, Judge Covelli held an evidentiary hearing in which all parties participated. At this hearing the procedure in which the defendants had been selected as the "alternative" delegation was introduced, as well as the fact that the defendants had violated the July 8,

1972, injunction by participating in the 1972 Democratic National Convention as delegates. Once again, following the hearing, Judge Covelli entered certain findings of fact in which he found the plaintiffs to be the only duly elected delegates. Thereafter the judge ordered a supplemental injunction be entered which reflected his findings of fact that the plaintiffs were the only persons entitled to participate as delegates in the August 5, 1972, party caucus of delegates, and he also restrained the defendants from performing any functions as delegates at such caucus. This appeal was thereafter taken from the orders of the trial court entered on July 8 and August 2, 1972.

The first issue presented for review is whether the trial court's assertion of jurisdiction over this matter contradicted the judgment of the U.S. Court of Appeals for the District of Columbia Circuit and the opinion of the U.S. Supreme Court, and whether they were binding and res judicata as to the issues in this case.

The defendants contend the trial court lacked jurisdiction to consider this cause. The basis for this contention by the defendants lies in their interpretation of the effect of the judgment by the U.S. Court of Appeals for the District of Columbia Circuit entered on July 5, 1972, wherein the Court of Appeals enjoined the plaintiffs from proceeding with this cause in the Circuit Court of Cook County. (*Keane v. National Democratic Party* (1972), 469 F.2d 563.) The defendants acknowledge such judgment was stayed by the U.S. Supreme Court on the evening of July 7, 1972. However, they attempt to limit the nature of the stay entered by the Supreme Court by asserting that nothing in the opinion of the Supreme Court suggests any intention whatsoever of permitting the plaintiffs to proceed with this cause in the Circuit Court of Cook County. Rather, the defendants contend the judgment of the Supreme Court staying the injunction of the Court of Appeals was intended solely to permit a determination of the issues to be made by the Democratic National Convention "free from judicial intervention." (*Keane v. National Democratic Party* (1972), 469 F.2d 563, *judgment stayed*, U.S., 34 L.Ed.2d 1.) The opinion does not say "free from judicial intervention," but says "absent judicial intervention, the Convention could decide to accept or reject, or accept with modification, the proposals of its Credentials Committee." The court was discussing the Federal courts and does not mention State laws, election of delegates or their rights, or the jurisdiction of State courts over their delegates. It must be recognized that the Circuit Court of Illinois was not intervening in the Convention, but only exercised its jurisdiction over the Illinois delegates and challengers under the Illinois Election Code.

The defendants further contend the Supreme Court's stay of the judg-

ment of the Court of Appeals does not operate in any way to alter the binding and res judicata effect of that judgment, and thereby permit a collateral attack of that judgment in an Illinois court, specifically the Circuit Court of Cook County. The defendants would have this court accept their interpretation that the execution of the judgment of the Court of Appeals has been suspended by the Supreme Court's action, thereby barring any assertion of jurisdiction over this matter by an Illinois court.

At the outset, this court is requested to take judicial notice that the judgment of the U.S. Court of Appeals for the District of Columbia Circuit, upon which the defendants base their contention, was subsequently vacated by the U.S. Supreme Court and remanded to the Court of Appeals for further determination. (*Keane v. National Democratic Party,* 469 F.2d 563, *judgment stayed,* (U.S.), 34 L.Ed.2d 1, *judgment vacated,* (U.S.), 34 L.Ed.2d 73.) Considering first the stay order, we hold it completely froze the order of the Court of Appeals, including the injunction order directed to the Circuit Court of Illinois, thereby allowing the Circuit Court to proceed. Then came the Supreme Court order vacating the Court of Appeals order, thereby rendering said order nonexistent and a nullity, as if it never existed. It was stricken from the records and of no force or effect. Certainly such a vacated order could not be res judicata of anything. In addition there are other reasons why it is not res judicata. On February 16, 1973, the Court of Appeals determined the issues before it were moot and joined in the finding previously entered by the District Court for the District of Columbia, wherein the defendants were denied the injunctive relief which they sought. *Keane v. National Democratic Party,* D.C. Cir., Docket No. 72-1629 (1973).

■■ For a court to apply the doctrine of res judicata or the broader doctrine of estoppel by judgment, there are certain prerequisites which must be present. To be res judicata there must not only be an identity of the parties involved but there must also, and most importantly, be an identity of the issues. For the doctrine of estoppel by judgment to lie there must minimally be an *identity of issues.*

Viewing the issues and parties involved herein as compared with the issues and parties in the case upon which the defendants rely, namely, *Keane v. National Democratic Party,* we find a near total lack of identity as to either issues or parties. The issue which is central to the instant cause is the Illinois Election Code (Ill. Rev. Stat. 1971, ch. 46, § 7—1 *et seq.*), and the right of the plaintiffs who were elected pursuant to its provisions to serve in their elective office. The issue which was central to the litigation which ensued in *Keane v. National Democratic Party*

was the constitutionality of the guidelines of the National Democratic Party, upon which the Credentials Committee for the 1972 Democratic National Convention had determined the plaintiffs herein were not in compliance. In fact, the Court of Appeals in *Keane v. National Democratic Party* stated:

"No violation of Illinois law is at issue here."

Likewise, the parties in the two causes differ. The plaintiff in both causes is that same class composed of those individuals elected to be delegates to the 1972 Democratic National Convention from the 1st, 2nd, 3rd, 5th, 7th, 8th, 9th and 11th congressional districts in the State of Illinois. The defendants, however, are quite different. The defendants herein are the 59 members of the "alternative" delegation, including the original 10 individuals who initiated the challenge of the plaintiffs' right to sit as delegates filed with the Credentials Committee on March 31, 1972. The defendant in *Keane v. Democratic National Party*, was the National Democratic Party, although the original 10 challengers sought and were granted leave by the U.S. District Court for the District of Columbia to intervene in that case.

Another reason is most clear for this court to refuse to entertain the defendants' contention, namely, the defendants' failure to preserve their argument, based on the res judicata effect of the decision of the U.S. Court of Appeals for the District of Columbia Circuit, in the record. The Illinois Supreme Court in *Svalina v. Saravana* (1930), 341 Ill. 236, stated that for an estoppel defense to act as a bar to further litigation, it must be both pleaded and proven. A thorough review of the record as related to both the July 8, 1972, and August 2, 1972, trial court proceedings reflects that the defendants neither formally pleaded nor attempted to prove their claim of res judicata based on the decision of the Court of Appeals for the District of Columbia Circuit. The record reflects the defendants entered no pleadings other than a motion to dismiss, which was filed on July 5, 1972, and upon which they chose to stand. In that motion to dismiss, defendants refer to the litigation in the District Court for the District of Columbia. However, they make no mention of the decision of the Court of Appeals upon which they rely for their res judicata contention. This is another reason why this court refuses to entertain the defendants' contention concerning the res judicata claim of the decision of the Court of Appeals for the District of Columbia.

This court is also asked to take judicial notice of the decision of the Court of Appeals for the 7th Circuit in the case of *Cousins v. Wigoda* (1972), 463 F.2d 603, initiated by the original 10 challengers, defendants herein, against that class of persons who are plaintiffs herein in the U.S. District Court for the Northern District of Illinois. In that decision the

Court of Appeals for the 7th Circuit makes it most clear where they believe jurisdiction over the instant matter should be assumed when they state:

> "There are valid reasons why the courts of Illinois may properly assume jurisdiction over some aspects of the controversy between Cousins and Wigoda. In the state complaint Wigoda has alleged full compliance with the provisions of the Illinois Election Code; Cousins has not  *  *  *  disputed those allegations  *  *  *. Indeed, the Rules of the National Convention contemplate reference to state law in connection with various issues.  *  *  * Plaintiffs have not alleged or attempted to prove they will not receive a fair trial in the courts of Illinois, or that the state judicial system will not fully honor and protect their constitutional rights."

Immediately thereafter the challengers sought a stay of the Court of Appeals order from the Supreme Court of the United States. In denying the stay, Mr. Justice Rehnquist said (409 U.S. 1201, 34 L.Ed.2d 15):

> "The opinion issued by the Court of Appeals majority specifically alluded to petitioners' [the challengers'] failure to allege that they could not adequately vindicate their constitutional claims in the Illinois state courts, and I must conclude that those courts are available to petitioners for this purpose."

The second issue presented for review is whether the trial court's action violated the fundamental constitutional rights of free political association of the defendants in the National Democratic Party.

The defendants contend their right to freedom of political activity and association as assured them under the first amendment of the U.S. Constitution was patently abrogated by the trial court's judgment enjoining them from acting or purporting to act as delegates to the 1972 Democratic National Convention from the particular congressional districts involved herein. The defendants base this contention on their assertion: that the National Democratic Party formulated and adopted certain guidelines for organizing their party; that the plaintiffs, following the filing of a challenge by 10 of the defendants and the holding of a formal hearing pursuant thereto, were found by the hearing officer to be in violation of certain of those guidelines; and, that the Credentials Committee of the 1972 Democratic National Convention adopted the findings of the hearing officer that the plaintiffs were in violation of certain of the guidelines and voted that the defendants should be seated as an "alternative" delegation in place of the plaintiffs. Based on these assertions, the defendants conclude any attempt to prevent them from participating as delegates representing the challenged congressional districts would therefore violate their right, and the right of the National Democratic Party,

to freedom of political activity and association as assured them under the First Amendment.

■■ In claiming their fundamental rights have been abrogated, the defendants fail to consider certain rights of plaintiffs which have been abrogated not only by defendants' actions but also by the actions of certain representatives of the Credentials Committee of the 1972 Democratic National Convention. Initially, it is necessary for this court to state that although the purposes and guidelines for reform adopted by the Democratic National Party in its Call for the 1972 Democratic National Convention were issued, they in no way take precedence in the State of Illinois over the Illinois Election Code (Ill. Rev. Stat. 1971, ch. 46, § 7—1 *et seq.*). The opening section of Article 7 of the Election Code, which deals with the making of nominations by political parties (§ 7—1), is most clear when in discussing the selection of delegates to National nominating conventions, it states:

"§ 7—1. * * * [D]elegates and alternate delegates to National nominating conventions by all political parties, as defined in Section 7—2 of this Article 7, shall be made in the manner provided in this Article 7, and not otherwise."

The record reflects that at no time has the election of the plaintiffs been challenged by the defendants under any of the numerous provisions provided in Article 7 of the Election Code. These provisions were included in the Election Code to insure the due process rights of the participants in elections and the rights of voters would be preserved at all stages of the elective process. On oral argument, counsel for the defendants admitted the plaintiffs were elected according to the provisions of the Election Code, and the defendants in no way contested such election under the Election Code. However, the defendants still persist in attempting to assert their right to the office of delegates to the 1972 Democratic National Convention from the particular Congressional Districts involved, and still contend that any judgment by the trial court in upholding the election of the plaintiffs by approximately 700,000 voters is an abrogation by that court of their fundamental rights of political association. We disagree with defendants' reasoning. On the one hand the defendants admit the plaintiffs were duly elected to the elective office of delegates to the 1972 Democratic National Convention, and on the other hand they state any judgment by the trial court upholding such election is a violation of their rights. The sole basis for such shallow reasoning appears to be the defendants' reliance on the findings of a hearing officer appointed by the acting chairman of the Credentials Committee for the 1972 Democratic National Convention to determine the merits of the defendants' challenge of the plaintiffs' elec-

tion, and the action by the Credentials Committee in adopting his findings. Having reviewed the findings of the hearing officer, we conclude he erred in his refusal to consider the legal arguments, including the constitutionality of the guidelines, and by disregarding the Illinois law, all of which were raised by the plaintiffs. In view of the fact the defendants rely on a report which is blatantly violative of the plaintiffs' due process rights on its very face, and the actions of the Credentials Committee subsequent to the receipt of such report, we find it necessary to examine the action of the Convention.

In *United States v. Classic*, 313 U.S. 299, at 318, 61 S.Ct. 1031, at 1039, the Supreme Court said:

> "Where the state law has made the primary an integral part of the procedure of choice, or where in fact the primary effectively controls the choice, the right of the elector to have his ballot counted at the primary, is likewise included in the right protected by Article I, § 2. And this right of participation is protected just as is the right to vote at the election, where the primary is by law made an integral part of the election machinery, whether the voter exercises his right in a party primary which invariably, sometimes or never determines the ultimate choice of the representative."

The Poole report ignored the State law and the fact the guidelines referred to, which state "When State law controls, the Commission recommends that State parties make all feasible efforts to repeal, amend, or otherwise modify such laws to accomplish the stated purpose," and also provides, "* * * the Commission urges each State party to adopt procedures which will provide fair representation of minority views on presidential candidates and recommends that the 1972 Convention adopt a rule requiring State parties to provide for the representation of minority views to the highest level of the nominating process."

The people voting in the primary elected 59 delegates, including nine male and three female blacks, and four Caucasian females, two Latin American females, and five Caucasian persons under 30 years of age, making a total of 23 delegates representing the minority views, yet the Poole report calls this "proof of actual discrimination by itself." Such a conclusion demonstrates deliberate distortion of the facts by the hearing officer.

■■ The right to sit as a delegate representing Illinois at the national nominating convention is governed exclusively by the Illinois Election Code. As stated in section 7—1 of the Code, the election of delegates and alternates "* * * to national nominating conventions * * * shall be made in the manner provided in this Article 7, and not other-

wise." Also, see *Cousins v. Wigoda,* 463 F.2d 603, 606 (7th Cir. 1972), *application for stay denied,* (U.S.), 34 L.Ed.2d 15, where the court said:

"Illinois law may control, or may affect, the manner of selecting substitutes or alternates. Indeed the Rules of the National Convention contemplate reference to state law in connection with various issues."

The Rules of the National Convention state:

"B—6. Adequate representation of minority views on presidential candidates at each stage in the delegate selection process * * * the Commission urges each State Party to adopt procedures which will provide fair representation of minority views on presidential candidates and recommends that the 1972 Convention adopt a rule requiring State Parties to provide for the representation of minority views to the highest level of the nominating process.

The Commission believes that there are at least two different methods by which a State Party can provide for such representation * * *. Second, it can choose delegates from fairly apportioned districts no larger than congressional districts.

C—5. Committee selection process * * * the Commission requires State Parties to limit the National Convention delegation chosen by committee procedures to not more than 10 percent of the total number of delegates and alternates.

When State law controls, the Commission recommends that State. Parties make all feasible efforts to repeal, amend, or otherwise modify such laws to accomplish the stated purpose."

Elections in Illinois are, by the mandate of the Illinois Constitution of 1970 (Art. 4, § 3), "free and equal." The courts have long required that primary elections be free and open to all qualified persons. *Craig v. Peterson* (1968), 39 Ill.2d 191; *People v. Deatherage* (1948), 401 Ill. 25, 37; *People ex rel. Breckon v. Board of Election Commissioners* (1906), 221 Ill. 9; *Malone v. Superior Court,* 40 Cal.2d 546, 551, 254 P.2d 517 (1953); *State ex rel. Cook v. Houser,* 122 Wis. 534, 100 N.W. 964 (1904); *Walling v. Lansdon,* 15 Idaho 282, 300-303 (1908); *Walker v. Grice,* 162 S.C. 29, 35, 159 S.E. 914, 917-918; *Kinney v. House,* 243 Ala. 393, 394, 10 So.2d 167, 168; *Bentman v. 7th Ward Democratic Executive Committee,* 421 Pa. 188, 199-203 (1966); *O'Brien v. Fuller,* 93 N.H. 221, 228, 39 A.2d 220 (1944); *Lasseigne v. Martin,* 202 So.2d 250, 255 (La. App. 1967); *Shelly v. Brewer,* 68 So.2d 573 (Fla. 1953); *State ex rel. Merrill v. Gerow,* 79 Fla. 804, 809, 85 So. 144, 146 (1920); *D'Alemberte v. State ex rel. Mays,* 56 Fla. 162, 47 So. 489, 499 (1908); *Application of McSweeny,* 61 Misc. 2d 869, 307 N.Y.S.2d 88 (1970);

*Currie v. Wall,* 211 S.W.2d 964, 967 (Tex. Civ. App. 1948); *Carter v. Tomlinson,* 220 S.W.2d 351 (Tex. Civ. App. 1949); *Morris v. Peters,* 203 Ga. 350, 364, 46 S.E.2d 729, 738; *State ex rel. Kennedy v. Martin,* 24 Mont. 403, 62 P. 588 (1900).

The right of an elected delegate to assume office is important not only to him, but to the electors of the party. In *State ex rel. Merrill v. Gerow,* 79 Fla. 804, 85 So. 144, the Florida Supreme Court stated:

> "The rights acquired and the duties imposed by the primary election laws are valuable and important not only to those who acquire them under the law, but to the entire people of the State. Upon the manner in which these powers and duties are performed, depends to an appreciable degree, the welfare of the State. * * *. The rights acquired under a primary elections law are, therefore, of the same nature as those acquired under the general election laws, and to deprive a person of the rights acquired by the former is the equivalent of depriving him of his right to hold the office." 79 Fla. 804, 809; 85 So. 144, 146.

The primacy of state law over the decisions of a national political party convention was detailed in an early decision of the Wisconsin Supreme Court in *State ex rel. Cook v. Houser,* 122 Wis. 534, 100 N.W. 964 (1904). There, a dispute arose between two groups of Republican party officials, each claiming that it had held a regular and proper state convention to choose candidates for the general elections and delegates to the party's national convention. Wisconsin statutes provided for the creation of a party tribunal to make determinations and advise the Secretary of State in such disputes. The officially designated tribunal decided for one group, the national convention for the other. The court held that the determination of the national convention could not control the decision by the state tribunal authorized by statute. The court stated:

> "We do not find anything in any of such cases remotely, even, sustaining the proposition that the decision of the national convention of a party is superior to the decision of a state tribunal of the same party, where the latter tribunal is made the sole judge by legislative enactment, or otherwise.
> * * *
> In view of the foregoing, since the law of this state has provided the conditions under which the party nominees shall go upon the official ballot, how can it be reasonably said that the decision of the national convention of a party can nullify it? The answer seems so plain as not to warrant this extensive treatment of the matter. Nothing but the great importance of the case could be held to justify it. The moment the conventions performed their

work of choosing candidates, the rights of such candidates to have their names placed upon the official ballot became irrevocable privileges, subject only to the legislative condition. That such condition could be displaced by any mere party authority, either within or without the state, dignifying it as paramount to the sovereign will of the people, and so binding its courts and its special tribunal created to decide the matter, does not seem to us to have support in reason or authority." 122 Wis. at 586, 589.

Because election to the office of convention delegate in Illinois is governed by non-discriminatory state legislation, the instant case is not merely an intraparty factional dispute to be settled by party discipline. In this case, the law of the state is supreme and party rules to the contrary are of no effect. In *Malone v. Superior Court*, 40 Cal. 2d 546, 254 P.2d 517 (1953), the court stated:

"The prospective witnesses contend, however, that courts will not interfere with affairs of political parties or committees and hence applicant could have no cause of action. (18 Am. Jur., Election, §§ 143, 144.) 'Where, however, statutes conferring legal rights on members of a political party have been passed, the courts have the right to ascertain whether those rights have been violated and the decision of a party tribunal on such question is of no binding effect. Moreover, if primary elections have been established by law, a candidate cannot be divested by a political organization of rights derived from such election, the question being no longer solely a political one, but one of law of which the courts must take cognizance. The same is true with respect to the rights of members of a party committee elected at a primary election conducted under public authority.' (18 Am. Jur. supra, Elections, § 143.) Certainly, where civil and property rights rather than politics and political dogma are involved, the court will protect them." 40 Cal.2d at 551.

Courts are reluctant to intervene in intraparty disputes only where the right in question is not governed by statute. When, however, the subject matter is controlled by legislation, particularly the laws which provide for primary election to party office, the courts do not hesitate to assume jurisdiction. (*Lasseigne v. Martin*, 202 So.2d 250, 255 (La. App. 1967); 25 Am. Jur. 2d, Elections, § 126, p. 811.) Here the delegates were elected by a majority of the qualified Democratic electors in their respective districts. As such, under Illinois law, they are the legal representatives of the party and of the people at the Convention. As stated by the Supreme Court of this state in *People v. Sweitzer* (1918), 282 Ill. 171:

"They are elected at a direct primary election of their respective political parties in which each member of the party is entitled to exercise his choice, and they are made the legal representative of their respective parties. They are elected as the general representatives of the members of the party, and collectively they constitute the county convention for nominating candidates and may exercise all the powers of the political party in that regard." 282 Ill. 176.

Once the delegates were chosen in a free, open and nondiscriminatory primary election, it became the legal duty of the party to carry out the mandate of the electorate. Once elected, any question of the delegates' qualifications to hold office is beyond the authority of party functionaries; it is a legal right properly protected by the courts. *Allen v. Republican State Central Committee*, 57 So.2d 248, 251 (La. App., 1952).

A free and open election process is the cornerstone of our government. The right of a citizen to vote is a fundamental political right, preservative of all rights. (*Reynolds v. Sims*, 377 U.S. 533, 562 (1964); *Dunn v. Blumstein*, 405 U.S. 330, 31 L.Ed.2d 274 (1972); *Evans v. Cornman*, 398 U.S. 419, 422 (1970); *Williams v. Rhodes*, 393 U.S. 23, 30 (1968).) The courts have consistently and jealously protected that right against denial, *Smith v. Allwright*, 321 U.S. 649 (1944), dilution, *Gray v. Sanders*, 372 U.S. 368 (1963), or even discouragement, *Williams v. Rhodes*, 393 U.S. 23 (1968). As stated by the Supreme Court in *Harper v. Virginia Board of Elections*, 383 U.S. 663 (1966):

"Long ago in *Yick Wo v. Hopkins*, 118 U.S. 356 * * *, the Court referred to 'the political franchise of voting' as a 'fundamental political right because preservative of all rights.' Recently in *Reynolds v. Sims*, 377 U.S. 533 * * *, we said 'Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.'" 383 U.S. at 667.

State and federal courts have gone to great lengths to open up the primary election process and to maximize the rights of citizens to participate therein. *Dunn v. Blumstein*, 405 U.S. 330, 31 L.Ed.2d 274 (1972), and cases cited therein; *Smith v. Allwright*, 321 U.S. 649 (1944); *Terry v. Adams*, 345 U.S. 461 (1953); *Rice v. Elmore*, 165 F.2d 387 (4th Cir. 1947), *cert. denied*, 333 U.S. 875 (1948); *People ex rel. Breckon v. Board of Election Commissioners*, 221 Ill. 9, 18-19 (1906); *People ex rel. Coffey v. Democratic General Committee*, 164 N.Y. 335, 341-42, 58 N.E. 124

(1900); *Bentman v. 7th Ward Democratic Executive Committee,* 421 Pa. 188, 200-202 (1966); *State ex rel. Merrill v. Gerow,* 79 Fla. 804, 85 So. 144, 145-147 (1920); *Carter v. Tomlinson,* 220 S.W.2d 351, 355 (Tex. Civ. App. 1949).

■■ The interest of the state in protecting the effective right to participate in primaries is superior to whatever other interests the party itself might wish to protect. See *State ex rel. Merrill v. Gerow,* 79 Fla. 804, 85 So. 144 (1920); *Malone v. Superior Court,* 40 Cal.2d 546, 254 P.2d 517 (1953); *People ex rel. Coffey v. Democratic General Committee,* 164 N.Y. 335, 341 (1900); *Bentman v. 7th Ward Democratic Executive Committee,* 421 Pa. 188, 198 (1966).

The legislature of the State of Illinois has established election machinery to guarantee the broadest possible citizen and candidate participation in the nomination process by providing for election of delegates to the national conventions. The defendants cannot be permitted to frustrate the state's interest in maximizing that participation. Party rules are not a law unto themselves. (*Smith v. Allwright,* 321 U.S. 649, 663 (1944).) As stated in *People ex rel. Coffey v. Democratic General Committee:*

> "The dominant idea pervading the entire statute is the absolute assurance to the citizen that his wish as to the conduct of the affairs of his party may be expressed through his ballot and thus given effect, whether it be in accord with the wishes of the leaders of his party or not, and that thus shall be put in effective operation, in the primaries, the underlying principle of democracy, which makes the will of an unfettered majority controlling. In other words, the scheme is to permit the voters to construct the organization from the bottom upwards, instead of permitting leaders to construct it from the top downward." 164 N.Y. at 341-342.

The Illinois Supreme Court has demonstrated that it will enforce the right of Illinois citizens to maximum participation in the process by which candidates are nominated for a public office. In *People ex rel. Breckon v. Board of Election Commissioners* (1906), 221 Ill. 9, relator filed a petition for a writ of mandamus to direct the defendant Board of Election Commissioners to allow the Socialist Party to hold a primary election. The court stated:

> "The right to choose candidates for public offices whose names will be placed on the official ballot is as valuable as the right to vote for them after they are chosen, and is of precisely the same nature. There is scarcely a possibility that any person will or can be elected to office under this system unless he shall be chosen at

a primary election, and this statute, which provides the methods by which that shall be done and prescribes and limits the rights of voters and of parties, must be regarded as an integral part of the process of choosing public officers, and as an election law. It is undoubtedly true, as urged by counsel for defendants, that it has become not only proper, but necessary, to provide additional safeguards and protection to the voters at primary elections, to the end that their will may be fully expressed and faithfully and honestly carried out, and any law having that object in view would naturally commend itself to the lawmaking power. The legitimate purpose of such a law, however, must be to sustain and enforce the provisions of the Constitution and the rights of the voters, and not to curtail or subvert them or injuriously restrict such rights." 221 Ill. at 18-19.

The National Convention is an integral part of the process by which the President and Vice President of the United States are elected. The citizens of the state have an obvious interest in preserving the validity of their votes for delegates to the convention. (*Gray v. Sanders,* 372 U.S. 368, 380 (1962); *Newberry v. United States,* 256 U.S. 232, 285, 286 (1921); *Georgia v. National Democratic Party,* 447 F.2d 1271 (D.C. Cir. 1971).) In *Newberry v. United States,* Mr. Justice Pitney stated:

"[I]t seems to me too clear for discussion that primary elections and nominating conventions are * * * closely related to the final election * * *. So strong with the great majority of voters are party associations, so potent to the party slogan, so effective the party organization, that the likelihood of a candidate succeeding in an election without a party nomination is practically negligible. As a result, every voter comes to the polls on the day of the general election confined in his choice to those few candidates who have received party nominations * * *. As a practical matter, the ultimate choice of the mass of voters is predetermined when the nominations have been made." 256 U.S. at 285-286.

Defendants' challenge rests on the premise they and various party functionaries are a force superior to the will of the voting majority and the votes cast for the delegates are somehow less significant than any other votes. This premise is diametrically opposed to the Illinois Constitutional guaranty of "free and equal" elections which holds that each vote is equal in its influence on the result as any other vote. (*Craig v. Peterson,* 39 Ill.2d 191, 233 N.E.2d 345 (1968); *Moran v. Bowley,* 347 Ill. 148, 162-163, 179 N.E. 526 (1932).) As early as 1886, the Illinois

Supreme Court stated in *People ex rel. Grinnell v. Hoffman*, 116 Ill. 587 (1886):

> "Elections are free, where the voters are subjected to no intimidation or improper influence, and where every voter is allowed to cast his ballot as his own judgment and conscience dictate. Elections are equal, when the vote of every elector is equal, in its influence upon the result, to the vote of every other elector,—when each ballot is as effective as every other ballot." 116 Ill. at 599.

■■ The right to effective candidacy for public and party office is an obvious corollary to the right to vote. (*Hadnott v. Amos*, 394 U.S. 358, 364 (1969); *Williams v. Rhodes*, 393 U.S. 23, 30 (1968); *Gonzales v. City of Sinton*, 319 F.Supp. 189, 190 (S.D. Tex. 1970); *Stapleton v. City of Inkster*, 311 F.Supp. 1187, 1189-1190 (E.D. Mich. 1970); see also "Constitutional Safeguards in the Selection of Delegates to National Nominating Conventions," 78 Yale L.J. 1228, 1247-1249 (1970).) As stated by the District Court in *Gonzales*:

> "It is equally certain that, to be guaranteed the full extent of the rights acknowledged by these franchise cases, plaintiffs must be granted the concomitant right to stand for office. A resident's vote for the candidate of his choice may have little meaning if no candidate speaks for the interests of that voter  *  *  *," 319 F. Supp. at 190.

The right of the challenged delegates to stand for office is a right protected by the equal protection clause, *Williams v. Rhodes*, 393 U.S. 23, 30 (1968); *Moore v. Ogilvie*, 394 U.S. 814 (1969), and by due process, *Williams v. Rhodes*, 393 U.S. 23, 41 (1968) (Harlan, J., concurring); *Briscoe v. Kusper*, 435 F.2d 1046, 1053-1054 (7th Cir. 1970).

We think the Convention, a voluntary association, was without power or authority to deny the elected delegates their seats in the Convention and most certainly could not seat people of their choice and force them upon the people of Illinois as their representatives, contrary to their elective mandate. Such action is an absolute destruction of the democratic process of this nation and cannot be tolerated.

Since the plaintiffs were admittedly elected to the position of delegates to the 1972 Democratic National Convention by operation of the Election Code, an Illinois statute, this court finds the trial court's injunctions did not abrogate defendants' fundamental constitutional rights of free political association. Rather, we find the due process and equal protection rights of the plaintiffs and approximately 700,000 voters have been abrogated by the actions of the defendants.

The third issue presented for review is whether the courts of equity have jurisdiction over political controversies.

The defendants contend the action of the trial court in granting both the July 8, 1972, and August 2, 1972, injunctions was patently contrary to established Illinois law that courts of equity have no jurisdiction over political controversies. In presenting this contention for consideration, the defendants rely heavily on the decision of the Illinois Supreme Court in *People v. McWeeney* (1913), 259 Ill. 161, a case in which both an injunction, issued to bar certain individuals from interfering with a city political meeting, and contempt proceedings, held subsequent to the violation of the injunction, were overturned by the Supreme Court.

This court finds no merit in defendants' contention that the trial court's action violated an established principle of Illinois law. The defendants' reliance on the decision in *People v. McWeeney* is not well taken since *People v. McWeeney*, in which no statute was in issue, most clearly states:

> "The general rule is well established that the judicial department of the government has no right to interfere with or attempt to control a citizen in the exercise of political rights unless the jurisdiction is expressly given by statute or by clear implication."

The people of this state have a right to rely on a statute and the courts have a duty to follow the terms of a statute.

■■ The plaintiffs, as the defendants have admitted, were elected according to the provisions of the Election Code and were duly certified according to the provisions of the Election Code to be the delegates to the 1972 Democratic National Convention from their respective congressional districts. This court, therefore, finds both the statute and the requisite "clear implication" called for by the Supreme Court in *People v. McWeeney* present for a court of equity to take jurisdiction over this controversy.

The final issue presented for review is whether the trial judge's public comments on this action display a gross bias against the defendants.

The defendants contend that certain comments attributed to the trial judge display such bias against the defendants as to call the courts of this state into disrepute. The defendants further contend these comments demonstrate the defendants did not receive a fair hearing as guaranteed by the due process and equal protection clauses of both the U.S. Constitution and the Constitution of the State of Illinois. The basis for defendants' contention is certain newspaper articles in which statements attributed to the trial judge reflect what the defendants contend to be gross bias against them on his part.

The record reflects the trial judge, having received the instant cause

on July 8, 1972, subsequent to a change of venue taken by the defendants from another circuit court judge, held a hearing in which both plaintiffs and defendants participated. At the conclusion of the hearing the trial judge issued the first of two injunctions barring the defendants from acting or purporting to act as delegates to the 1972 Democratic National Convention. At no time prior to or during the course of the hearing on July 8, 1972, did the defendants present a motion for change of venue from the trial judge. Such motion was made by the defendants on July 20, 1972, nearly two weeks later. At that time the trial judge responded to the defendants' counsel regarding the comments attributed to him in those newspaper articles published subsequent to July 8, 1972, and thereafter denied the motion for change of venue to Lake County. The Illinois Venue Act (Ill. Rev. Stat., ch. 146, § 8) clearly states:

"§ 8. Neither party shall have more than one change of venue."

In view of this statutory section, and since the defendants' motion for a second change of venue was not made until 12 days after a hearing on the merits from which an injunction had issued, this court finds no merit in the defendants' contention that the public comments attributed to the trial judge in newspaper articles subsequent to their original hearing precluded them from receiving a fair hearing.

■■ For the reasons stated herein, the orders of the Circuit Court of Cook County are affirmed.

Affirmed.

BURMAN, P. J., and ADESKO, J., concur.